**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROBERT ANDREW POIZNER, | Case No.:  14cv1614 LAB (RBB) |
| Petitioner, | **ORDER:** |
| v. | **(1) DENYING PETITION FOR WRIT OF HABEAS CORPUS; and** |
| SCOTT FRAUENHEIM, et al., | |
| Respondents. | **(2) DENYING CERTIFICATE OF APPEALABILITY** |

## I.      <u>INTRODUCTION</u>

Petitioner Robert Andrew Poizner, a state prisoner represented by counsel, has filed a First Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Petition") challenging his convictions in San Diego County Superior Court Case No. SCD230891 for committing lewd and lascivious acts with a child, committing lewd acts on a child, sexual battery, exhibiting harmful matter to a minor, distributing or exhibiting harmful matter to a child, contributing to the delinquency of a minor, dissuading a

/ / /

/ / /

/ / /

/ / /

1

witness, and disobeying a court order.  (Pet., ECF No. 12.)[1]  Poizner raises fourteen claims in the petition he has filed in this Court.

The Court has read and considered the Petition [ECF No. 12], the Answer and Memorandum of Points and Authorities in Support of the Answer [ECF No. 19], Petitioner's Traverse [ECF No. 22], the Supplemental Answer [ECF No. 28], the Supplemental Traverse [ECF No. 29], the lodgments and other documents filed in this case, and the legal arguments presented by both parties.  For the reasons discussed below, the Court **DENIES** the petition and **DENIES** a Certificate of Appealability.

## II.   FACTUAL BACKGROUND

This Court gives deference to state court findings of fact and presumes them to be correct; Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1) (West 2006); *see also Parle v. Fraley*, 506 U.S. 20, 35-36 (1992) (holding findings of historical fact, including inferences properly drawn from these facts, are entitled to statutory presumption of correctness).  The following facts are taken from the California Court of Appeal opinion:

> In 2009, Poizner was a volunteer counselor at Pacific Health Systems, a substance abuse rehabilitation center.  There, he introduced himself to and befriended adolescent boys who were attending Alcoholics Anonymous (AA) and other group meetings, telling one of the boys he was there to help keep himself sober and assist other teenage boys.  He then brought the boys to his apartment where he committed acts summarized below and for which he was convicted of the above-referenced offenses.  At trial, each victim testified about Poizner's conduct and touching, and the circumstances that otherwise led to the charges against him.  Like Poizner's opening brief, our factual summary focuses mainly on the evidence supporting the felony sexual assault offenses against Austin G., Brandon P., Evan W., and Andrew D.

/ / /

/ / /

---

[1] Page numbers for docketed materials cited in this Report and Recommendation refer to those imprinted by the Court's electronic case filing system, except for lodgments.

*Counts 1-8: Austin G.*

In September 2009, Poizner agreed to become the AA sponsor of then 13-year-old Austin G. One night after an AA meeting, Poizner obtained Austin's parents' permission to take Austin out for coffee. Afterwards, Poizner took Austin back to his apartment, where he put on an adult pornographic movie for Austin to watch and gave him cigarettes. Poizner sat on a couch next to Austin and at some point began to touch Austin's genitals over his clothing, then underneath his clothing. Poizner offered to orally copulate Austin but then resisted, telling Austin it would be "awkward" since he was Austin's sponsor. Poizner asked Austin to show him his penis, and Austin did so by unbuttoning his pants. Poizner also kissed Austin on his buttocks. Austin and Poizner eventually left the apartment in Poizner's car, where Poizner again rubbed Austin's genitals over his clothing. When Poizner returned Austin home, he told Austin's mother he was gay, but that he was into stable, committed relationships and not interested in teenagers or boys. Austin did not tell his mother what had happened because he was in shock and did not want anyone to know about it.

Three days later, Austin's mother dropped Austin off to meet Poizner at a comedy club. About an hour and a half later, they went back to Poizner's apartment, where Poizner again put on pornography, pulled down Austin's pants and began rubbing Austin's genitals. Poizner also rubbed himself over his clothing, and then asked whether Austin wanted to be orally copulated. Again, Poizner refrained, acknowledging his role as Austin's sponsor. Austin pulled up his pants, they smoked cigarettes, and Poizner took him home. On the way, Poizner told Austin not to tell anyone about what had happened.

At trial, the People played for the jury a tape-recorded pretext call between Austin and Poizner, in which Austin talked about what had happened. Poizner asked Austin if he was angry at him, and told him "that shit's never happened again." Austin asked Poizner to not touch him on his genitals if they ever went out again, and Poizner responded with incriminating statements, saying it would "never again" happen and his touching Austin "was just like something that just kind of happened . . . ."

/ / /

/ / /

/ / /

*Counts 11-18: Brandon P.*

In May 2009, Poizner became Brandon P.'s sponsor at Pacific Health Systems.  Brandon P. was 13 years old at the time.  Brandon began going to Poizner's apartment where he would spend the night on Poizner's mattress on the floor, sometimes with other friends, including Austin.  Poizner usually slept on the mattress or on a couch in his bedroom.  He would buy Brandon cigarettes, and also let him watch adult heterosexual pornographic videos.

Sometimes before or after showing the videos, Poizner would massage Brandon's back or feet, and sometimes the feet of the other boys.  Sometimes he would hug Brandon and kiss him on the neck, usually when Brandon was leaving.  On about 10 or 15 occasions in late 2009, Poizner spanked Brandon, sometimes pulling down his pants and exposing his buttocks and lightly spanking him, and sometimes having Brandon bend over his knee.  Poizner also spoke about his sex life with Brandon while they were alone, telling Brandon about other men he had sex with, and describing oral sex.  Poizner once jokingly offered to enter the shower while Brandon was showering.  Brandon saw that Poizner touched himself in his groin area while the pornography was playing.  On two different occasions, Poizner tapped Brandon's penis with the back of his hand, once over Brandon's clothes and another time after quickly pulling down Brandon's boxers.  Brandon testified that while he was still 13 years old, Poizner had massaged his back and neck about five times, and had hugged and kissed him a couple of times.

When the allegations of Poizner's molestations began to surface, Poizner called Brandon and told him to avoid speaking with an investigating detective.  Poizner picked Brandon up at school that day to prevent him from seeing the detective.

*Count 19: Andrew D.*

Andrew D. was a school friend of Brandon's, and got to know Poizner through Brandon.  He went to Poizner's house with Brandon and another friend, Colten.  They rented a regular movie and at some point, Poizner massaged Andrew's feet.  Andrew fell asleep in Poizner's bed wearing his shirt and boxer shorts.  Colten slept in the same bed.  When Andrew awoke, an adult heterosexual pornographic movie was playing on the television, and Poizner, Andrew and Colten watched it for about a half an hour.

*Counts 20-23: Evan W.*

Evan W., who was twelve years old at the time of trial, was another school friend of Brandon's and met Poizner through Brandon.  One night, Evan called Poizner, who picked him up in Encinitas and took him downtown where they ate and walked around, and eventually ended up at Poizner's apartment.  Evan and Poizner watched a movie, and Evan consumed most of an alcoholic drink that Poizner had purchased for him.  Evan was lying on Poizner's bed over the covers but got sick and passed out, awaking to find himself under the covers with adult heterosexual pornography on the television.

Evan estimated he spent the night at Poizner's apartment about 10 times.  Poizner always gave Evan cigarettes.  Evan, along with his friend Stephen, spent a third night at Poizner's apartment after Christmas of 2009, and drank another alcoholic beverage.  On this occasion, Poizner used a belt to spank both Stephen and Evan on their bare buttocks multiple times, joking that it was to punish them for going out and needing a ride.  Evan laughed, though Evan did not want Poizner to spank him.

On the fourth night Evan spent at Poizner's apartment, Poizner massaged Evan's back underneath his shirt, and eventually slipped his hands into Evan's pants and massaged his penis.  Evan also recalled spending the night at a hotel with Poizner and other boys on more than one occasion.  Poizner would give the boys foot massages and once kissed Evan's foot.

Poizner told Evan not to tell anyone about coming to his apartment and drinking or the fact that Poizner had touched him.  He told Evan not to speak about his arrest and that Evan did not have to answer questions from the police.

*Testimony of Brandon P.'s Friends*

Colten A., Deon D., Erick N., Tyler M., and Gabriel G. were Brandon's friends who all at some point visited Poizner's apartment   On one occasion there, Colten A. fell asleep and awoke to find a pornographic video playing and Poizner, who was only a few inches away from him, looking at him and Brandon.  He became concerned when he noticed most of his fly was unbuttoned though it had been closed when he fell asleep.

While at Poizner's apartment, Deon D. saw Poizner give Gabriel G. a kiss.  Deon also observed that Poizner was always talking about sex, gave Brandon a back massage on one occasion, and once bet him and other friends that Brandon had a bigger penis than them.

Erick N. smoked hookah and cigarettes given to him by Poizner at Poizner's apartment.  Poizner once massaged Erick's feet at a hotel and on one occasion kissed him on the neck.  Poizner asked Erick about masturbation and talked about girls giving Erick oral sex while touching Erick on his inner thigh near his groin, making Erick feel uncomfortable.

Poizner offered Gabriel G. cigarettes and offered to show him and others pornographic videos.  When allegations against Poizner surfaced, he called Gabriel and discouraged him from telling anyone he had gone to Poizner's apartment, and told him to come up with a "really good alibi." According to Gabriel, Poizner claimed Brandon's father was trying to make false accusations.  He also discouraged Gabriel from saying anything to police.

*Testimony of James Araway*

In November of 2005, James Araway, who had turned 18 years old the month before, was stationed in the military in San Diego, and met Poizner when Poizner offered to give him a ride back to his base.  They exchanged numbers and Araway called Poizner to meet and "hang out." Eventually, they ended up at Poizner's house where Araway drank alcohol and they watched movies.  After the first visit, Araway spent several nights at Poizner's house drinking and watching pornographic movies.  Araway slept on the couch in the living room and Poizner slept in his bedroom.  On one occasion, Poizner gave Araway a back massage.  On another occasion while they were watching pornography, Poizner, who had told Araway he was bisexual, gave Araway a "weird look," causing Araway to feel awkward.  Araway asked to be taken back to his ship because he did not know what Poizner was planning on doing.

*Evidence of Poizner's Journal Entries*

Before trial, the court considered the People's motion to admit a number of writings found in Poizner's home, including journal entries Poizner admitted writing describing his actions on different occasions with respect to two individuals identified as "James" and "Homeboy."  The trial

court heard extensive argument concerning the writings and excluded some as reflecting dissimilar conduct that was highly prejudicial. However, expressly conducting a section 352 analysis and inferring that the entry about "James" referred to James Araway, the court concluded that the two journal entries regarding James and Homeboy reflected recent conduct – including fondling, spanking, and showing the subjects pornography at Poizner's house – that was sufficiently similar to the charged misconduct to give them a high degree of relevance on the issues of Poizner's propensity and intent, as well as corroborating the victims' testimony.

At trial, the journal entries were read into evidence by a prosecution investigator. The entry concerning "James" began, "Dear James," then Poizner wrote that he had fondled James while he was sleeping, he had apologized to James about it but lied about why he did it, he was working through his "'sexual acting out through S.C.A. and the 10th Step,'" and offered to "make things right." The reverse side of the writing stated: "'10th Step. Last night I fondled this guy James while he was sleeping on my couch. He had nowhere else to go. I decided to do it. Not . . . it would affect him or not [sic]. He woke up startled.'" In the Homeboy entry, Poizner described various sexual acts he and Homeboy had engaged in, including oral copulation, masturbation and spanking, at times while watching pornography. Poizner wrote that he was Homeboy's AA sponsor when Homeboy was 17 years old, and that he had to personally observe Homeboy's drug testing, which necessitated watching him urinate. Poizner described fantasizing about Homeboy's penis and orally copulating him. Poizner also described how, on the night of Homeboy's 18th birthday, he came to Poizner's house where Poizner massaged him over his genital area and on his buttocks, and with his consent, spanked him on his bare buttocks "'for his birthday . . . .'" Poizner wrote that he recalled "'possibly smacking [Homeboy's] ass a couple of times before, jokingly, before he was 18, I think once.'"

(Lodgment No. 6 at 3-10.)

## III.   PROCEDURAL BACKGROUND

On November 19, 2010, the San Diego County District Attorney's Office filed a consolidated amended information charging Robert Andrew Poizner with ten counts of lewd acts on a child, a violation of California Penal Code (Penal Code) § 288(a) (counts one through six, nine through ten, and twenty-two through twenty-three), three counts of distributing harmful matter to a minor with the intent to seduce, a violation of Penal Code

§ 288.2(a) (counts seven, eight, and fifteen), four counts of lewd acts on a child of fourteen or fifteen years, a violation of Penal Code § 288(c)(1) (counts eleven through fourteen), three counts of distributing or exhibiting harmful matter to a minor, a violation of Penal Code § 313.1(a) (counts sixteen, nineteen, and twenty-seven), four counts of contributing to the delinquency of a minor, a violation of Penal Code § 272(a)(1) (counts seventeen, twenty, twenty-one, and twenty-four), two counts of attempting to dissuade a witness, a violation of Penal Code § 136.1(a)(2) (counts eighteen and twenty-five), and two counts of disobeying a court order, a violation of Penal Code § 166(a)(4) (counts twenty-six and twenty-eight).  (Lodgment No. 1, vol. 1 at 0024-35.)  As to counts one through six, nine, ten, twenty-two, and twenty-three, the information also alleged the offenses were committed against more than one victim, within the meaning of Penal Code §§ 667.61(b)(c)(e) and 1203.066(a)(7).  (*Id.*)  The information also alleged as to counts two, five, twenty-two, and twenty-three, that Poizner had substantial sexual contact with two of his victims, within the meaning of Penal Code § 1203.066(a)(8), and as to counts two and five, that Poizner "used matter depicting sexual conduct," within the meaning of Penal Code § 1203.066(a)(9).  (*Id.*)  Finally, the information alleged that Poizner had attempted to dissuade a witness, counts eighteen and twenty-five, while out of custody on bail, within the meaning of Penal Code § 12022.1(b).  (*Id.*)  The Penal Code § 1203.066(a)(8) allegation associated with counts twenty-three and twenty-four were dismissed after trial had begun.[2]  (*See id.* at 0034.)

     Following a jury trial, Poizner was convicted of counts one through eight, count twelve, and counts fourteen through twenty-eight.  (Lodgment No. 1, vol. 2 at 0307-46.)  The jury also found all the allegations associated with those counts to be true.  (*Id.*)  The jury found Poizner not guilty of counts nine through eleven and thirteen.  (*Id.* at 0319-23, / / /

---

[2]  An amended consolidated information (a "clean" copy of the information, reflecting the dismissed counts and factual changes made based on the evidence presented at trial) was filed on January 27, 2011, the final day of trial.  (Lodgment No. 1, vol. 1 at 0116-17l.)

0321.)  He was sentenced to seventy-five years-to-life plus seven years in prison. (Lodgment No. 1, vol. 2 at 0264.)

Poizner appealed his convictions to the California Court of Appeal for the Fourth Appellate District, Division One.  (Lodgment Nos. 3-5.)  The state appellate court affirmed his convictions in a written opinion.[3]  (Lodgment No. 6.)  Poizner then filed a petition for review in the California Supreme Court.  (Lodgment No. 7.)  The California Supreme Court denied the petition for review without citation of authority.  (Lodgment No. 8.)

Next, Poizner filed a petition for writ of habeas corpus in the San Diego Superior Court.  (Lodgment No. 9.)  The superior court denied the petition without prejudice in a written opinion.  (Lodgment No. 10.)  A subsequent habeas corpus petition filed in the California Court of Appeal was denied in a written opinion as well.  (Lodgment No. 11.) Finally, Poizner filed a petition for review of the appellate court's denial of his writ of habeas corpus in the California Supreme Court.  (Lodgment No. 12.)  That petition was denied without citation of authority.  (Lodgment No. 13.)

Poizner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this Court on July 7, 2014, and a First Amended Petition on November 13, 2014.  (ECF Nos. 1, 12.)  Respondent filed an Answer and Memorandum in Support of the Answer on February 11, 2015.  (ECF No. 19.)  Poizner filed a Traverse on February 25, 2015.  (ECF No. 12.)  Pursuant to an Order by this Court, Respondent filed a Supplemental Answer on September 17, 2015, and Poizner filed a Supplemental Traverse on September 24, 2015. (ECF Nos. 28-29.)

## IV.    DISCUSSION

Poizner raises fourteen claims in his Petition.  First, he claims newly discovered evidence proves his factual innocence.  (Pet. at 36-47.)  Second, Poizner contends there

---

[3]  The court of appeal modified the abstract of judgment to correctly reflect the Penal Code sections of which Poizner was convicted in counts eighteen and twenty-five.  (Lodgment No. 6 at 36-37.)

was insufficient evidence to support his convictions in counts twelve and fourteen because the prosecution did not prove Poizner's age. (*Id.* at 48-50.)  Third, Poizner argues the trial court improperly prevented him from admitting character evidence, violating his federal constitutional right to present a defense.  (*Id.* at 51-64.)  Fourth, Poizner contends the trial court's jury instructions on the allegations lowered the burden of proof on the prosecution.  (*Id.* at 65-72.)  Fifth, Poizner claims his sentence amounts to cruel and unusual punishment.  (*Id.* at 73-78.)  Sixth, Poizner argues the admission of uncharged acts violated his due process and fair trial rights.  (*Id.* at 79-95.)  Seventh, Poizner contends the trial court should have instructed the jury on California's corpus delicti rule. (*Id.* 96-97.)  Eighth, Poizner claims the trial court improperly admitted evidence of spanking as propensity evidence.  (*Id.* 98-99.)  Ninth, Poizner argues the trial court erroneously permitted the charged crimes to be admitted as propensity evidence.  (*Id.* 100-01.)  In claims ten and eleven, Poizner contends the trial court improperly admitted evidence of his sexual orientation, consensual homosexual activity, and possession of homosexual pornography.  (*Id.* at 102-10.)  In claim twelve, Poizner argues the cumulative effect of the errors committed at his trial violated his federal constitutional right to a fair trial.  (*Id.* at 111-13.)  Poizner also contends that trial counsel rendered ineffective assistance when he failed to obtain victim Brandon's psychiatric records, and failed to present character witnesses (claim thirteen).  (*Id.* at 46-47, 62-63, 94-95, 97.)  In addition, Poizner claims appellate counsel was ineffective for failing to raise the following issues on appeal: (1) trial counsel's failure to present character witnesses; (2) the trial court's improper reasonable doubt instructions; and (3) Poizner's sentence violates the Eighth Amendment's prohibition against cruel and unusual punishments (claim fourteen).  (*Id.* at 63-64, 72, 78.)

Respondent contends claims two, three, four and five are procedurally defaulted. Respondent also contends that there is no cognizable freestanding claim of actual innocence, and, in any event, Poizner has failed to show he is actually innocent.  (Mem.

/ / /

of P. & A. Supp. Answer at 21-26.)  As to the remaining claims, Respondent contends they fail on the merits.  (*Id.* at 26-50.)

### A.  Procedural Default

Respondent contends that claims two, three, four and five are procedurally defaulted because the state appellate court imposed the procedural bars of *In re Dixon*, 41 Cal.2d 756, 759 (1953) and *In re Lindley*, 29 Cal. 2d 709, 723 (1947) on those claims in its opinion denying the habeas corpus petition Poizner filed in the California Court of Appeal.  The state appellate court imposed *Dixon* and *Lindley* because the claims could have been raised on appeal but were not.  (Mem. of P. & A. Supp. Answer at 27, 31, 35, 38; Lodgment No. 11 at 2-4.)  The California Supreme Court denied the petition for review Poizner filed seeking to challenge the state appellate court's denial of the claims without citation of authority, and thus this Court must presume the California Supreme Court's denial rests upon the same ground as the appellate court's.  *Ylst*, 501 U.S. at 803.

The Ninth Circuit has held that because procedural default is an affirmative defense, Respondent must first "adequately [plead] the existence of an independent and adequate state procedural ground . . . ."  *Bennett v. Mueller*, 322 F.3d 573, 586 (9th Cir. 2003).  In order to place the defense at issue, Poizner must then "assert[] specific factual allegations that demonstrate the inadequacy of the state procedure . . . ."  *Id.*  The "ultimate burden" of proving procedural default, however, belongs to the state.  *Id.*  If the state meets its burden under *Bennett*, federal review of the claim is foreclosed unless Poizner can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

### 1.  Independence and Adequacy

A state procedural rule is "independent" if the state law basis for the decision is not interwoven with federal law.  *Michigan v. Long*, 463 U.S. 1032, 1040-41 (1983); *Harris v. Reed*, 489 U.S. 255, 265 (1989).  A ground is "interwoven" with federal law if the state

has made application of the procedural bar depend on an antecedent ruling on federal law such as the determination of whether federal constitutional error has been committed. *See Ake v. Oklahoma*, 470 U.S. 68, 75 (1985). "To qualify as an 'adequate' procedural ground, a state rule must be 'firmly established and regularly followed'." *Walker v. Martin*, 562 U.S. 307, 316 (2011) (quoting *Beard v. Kindler*, 558 U.S. 53, 60, 130 S. Ct. 612, 618 (2009).) All cases cited by a state court must be independent and adequate to bar federal review of the claims. *Washington v. Cambra*, 208 F.3d 832, 834 (9th Cir. 2000).

The Ninth Circuit has found *Lindley* to be an independent and adequate state procedural bar. *Carter v. Giurbino*, 385 F.3d 1184, 1197-98 (9th Cir. 2004). The analysis for the *Dixon* procedural bar, however, is more complex.

In *In re Robbins*, 18 Cal. 4th 770 (1998) the California Supreme Court stated that it would no longer consider federal law when denying a habeas claim as procedurally barred under *In re Clark,* 855 P.2d 729 (1993) or *Dixon*. *Robbins*, 18 Cal. 4th at 815, fn. 34. *Clark* embodies California's untimeliness bar, while *Dixon* stands for the proposition that "habeas corpus cannot serve as a substitute for appeal," and thus habeas corpus relief is not available in California for claims that could have been but were not raised on appeal. *Dixon*, 41 Cal. 2d at 759. *Bennett*, 322 F.3d at 582-82; *see also Park v. California*, 202 F.3d 1146, 1156 (9th Cir. 2000). The Ninth Circuit has not specifically concluded that a post-*Robbins* application of the *Dixon* rule is independent of federal law. The *Bennett* court's analysis of the independence of *Clark*, however, compels the same result for claims barred pursuant to *Dixon*. The pre-*Robbins* application of the two procedural bars was similar in that the invocation of either *Dixon* or *Clark* required the state court to determine if there existed fundamental constitutional error that would excuse the petitioner's default, and such an analysis necessarily involved the consideration of federal law. *Bennett*, 322 F.3d at 581-82; *see also LaCrosse v. Kernan*, 244 F.3d 702, 707 (9th Cir. 2001) (observing that consideration of federal law in barring claims as pretermitted is "analogous" to consideration of federal law in barring claims as

untimely).  Furthermore, in *Protsman v. Pliler*, 318 F. Supp. 2d 1004, 1007-08 (S.D. Cal. 2004), a Judge of this Court found a post-Robbins application of *Dixon* to be independent of federal law, and this Court agrees with the reasoning of that conclusion.

The Ninth Circuit has also not specifically found *Dixon* to be adequate.  But *Bennett* only requires Respondent at the initial stage to "affirmatively [plead] that [the Dixon] bar is independent and adequate.  *Bennett*, 322 F.3d at 586.  Respondent has done so.  (*See* Mem. of P. & A. Supp. Answer at 20.)  Further, the page of *Dixon* cited by the state appellate court in its opinion denying Poizner's petition refers to California's rule that claims that "habeas corpus cannot serve as a substitute for appeal," and thus habeas corpus relief is not available in California for claims that could have been but were not raised on appeal.  *Dixon*, 41 Cal. 2d at 759.  Given that the Ninth Circuit has determined that *Lindley*, which stands for the proposition that "habeas corpus is [not] an available remedy to review the rulings of the trial court with respect to the admission or exclusion of evidence, or to correct other errors of procedure occurring [during] the trial," *Lindley*, 29 Cal. 2d at 723, Respondent has met his initial burden under *Bennett* to establish that *Dixon* is an independent state procedural bar.  *Bennett*, 322 F.3d at 586.

### 2.  Petitioner's Burden

The burden now shifts to Poizner to "assert[] specific factual allegations that demonstrate the inadequacy of the state procedure . . . ."  *Bennett*, 322 F.3d at 586.  Poizner did not address the independence or adequacy of the *Dixon* bar in his Traverse.  (*See* Traverse.)  After the Traverse was filed, the Ninth Circuit decided *Lee v. Jacquez*, 788 F.3d 1124 (9th Cir. 2014) (*Lee III*), and the Court directed the parties to file supplemental briefs addressing the application of *Lee III* to this case.  (*See* Order dated July 10, 2015, ECF No. 24.)

In the Supplemental Answer, filed before Poizner filed his Supplemental Traverse, Respondent argues Poizner has not satisfied his burden at the second stage of *Bennett*, and because *Lee III* addresses only the third stage of *Bennett*, *Lee III* is inapposite.  (*See* Supp. Answer at 3-6.)  Respondent also notes that under Ninth Circuit authority, the

Court may choose to address the merits of Poizner's claims if it is in the interests of judicial economy.  (*Id.* at 6.)

In his Supplemental Traverse, Poizner alleges the *Dixon* bar is not adequate because at the time the California Court of Appeal denied Poizner's direct appeal in 2012, the California Supreme Court cited *Dixon* in about ten percent of its denials of habeas corpus petitions during a week-long period between February 24, 2012 and March 9, 2012.  (Supp. Traverse at 5, Ex. B.)  Poizner contends that "[b]ecause a much, much larger percentage of primarily non-capital habeas petitions would likely have included record-based claims, the sparsity of citation to *Dixon* reveals clear lack of consistency and regularity in the application of the bar."  (Supp. Traverse at 5.)

In *Lee v. Jacquez*, 406 Fed. Appx. 148 (9th Cir. 2011) (*Lee I*), Lee appealed the district court's conclusion that several of her claims were procedurally defaulted under *Dixon*.  The district court's ruling was based on its erroneous belief the Ninth Circuit had determined *Dixon* was an independent and adequate state procedural bar.  *Id*. at *150. After Lee presented evidence challenging the independence and adequacy of *Dixon* on appeal, the Ninth Circuit remanded the case back to the district court for consideration of Lee's evidence, which consisted of a list of 210 habeas corpus cases denied by the California Supreme Court on December 21, 1999, six months after Lee's default, only ten percent of which were denied by invoking *Dixon*.  *Id*.;  *Lee v. Mitchell*, 2012 WL 2194471 (*Lee II*) at *13-*14 (C.D. Cal. May 1, 2012).   Lee contended that "[b]ecause a much, much larger percentage of primarily non-capital habeas petitions would likely have included record-based claims, the sparsity of citation to Dixon reveals clear lack of consistency and regularity in the application of the bar."  *Lee II* at *13.  The petitioner in *Lee II* also cited federal cases in which the federal court had found *Dixon* to be inadequate.  On remand, the district court again concluded *Dixon* was independent and adequate and rejected the petitioner's evidence to the contrary.  *Id*. at *19-*20.

Lee appealed again.  The Ninth Circuit found that Lee had met her burden of putting the adequacy of *Dixon* at issue, and the burden had shifted to the Respondent to

establish *Dixon*'s adequacy.  *Lee III*, 788 F.3d at 1129.  The Court first rejected Respondent's argument that *Walker* was dispositive of *Dixon*'s adequacy.  *Id.* at 1129-31. Respondent also presented evidence that *Dixon* was adequate because it had been applied in approximately twelve percent of all habeas denials, which Respondent characterized as "a 'predicable' application."  *Id.* at 1133.  The Court ultimately rejected as "entirely insufficient" Respondent's evidence because it showed only the number of times the *Dixon* was actually applied as opposed to the number of times it should have been applied.  *Id.*  "Logic dictates that in order to know if invoking *Dixon* in twelve percent of all cases shows consistent application, we need to know 'the number of times that claims to which the *Dixon* rule could apply were instead rejected on the merits.'  [Citation omitted]."  *Id.*

The evidence presented by Poizner establishing the inadequacy of *Dixon* is essentially the same as that presented to the district court in *Lee II*.  The Ninth Circuit concluded the petitioner in *Lee II* had met her burden under Bennett.  *See Lee III*, 788 F.3d at 1129 (stating "our previous remand in this case suggests that Lee has met her burden of putting the adequacy of the *Dixon* rule at issue").  Accordingly, this Court concludes Poizner has met his burden at the second stage of *Bennett*.  The burden shifts back to the Respondent.  *Bennett*, 322 F.3d at 586.

### 3. Respondent's Burden

Respondent has not presented this Court with any further evidence of *Dixon*'s adequacy, and thus Poizner's claims are not procedurally defaulted.  *Bennett*, 522 F.3d at 586.  The Court will address the merits of Poizner's claims.

### B.  Merits — Standard of Review

In addition to imposing procedural bars on Poizner's claims, the state appellate court addressed the merits of those claims.  Respondent also briefed the merits of Poizner's claims, and, as discussed below, Poizner is not entitled to relief as to any claims.

/ / /

This Petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *See Lindh v. Murphy*, 521 U.S. 320 (1997). Under AEDPA, a habeas petition will not be granted with respect to any claim adjudicated on the merits by the state court unless that adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 8 (2002).  In deciding a state prisoner's habeas petition, a federal court is not called upon to decide whether it agrees with the state court's determination; rather, the court applies an extraordinarily deferential review, inquiring only whether the state court's decision was objectively unreasonable.  *See Yarborough v. Gentry*, 540 U.S. 1, 4 (2003); *Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004).

A federal habeas court may grant relief under the "contrary to" clause if the state court applied a rule different from the governing law set forth in Supreme Court cases, or if it decided a case differently than the Supreme Court on a set of materially indistinguishable facts.  *See Bell v. Cone*, 535 U.S. 685, 694 (2002).  The court may grant relief under the "unreasonable application" clause if the state court correctly identified the governing legal principle from Supreme Court decisions but unreasonably applied those decisions to the facts of a particular case.  *Id*.  Additionally, the "unreasonable application" clause requires that the state court decision be more than incorrect or erroneous; to warrant habeas relief, the state court's application of clearly established federal law must be "objectively unreasonable."  *See Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).  The Court may also grant relief if the state court's decision was based on an unreasonable determination of the facts.  28 U.S.C. § 2254(d)(2).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to last reasoned state court decision and presumes it provides the basis for the higher court's denial of a claim or claims.  *See Ylst v. Nunnemaker*, 501 U.S. 797,

805-06 (1991).  If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law.  *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by *Andrade*, 538 U.S. at 75-76); *accord Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).  However, a state court need not cite Supreme Court precedent when resolving a habeas corpus claim.  *See Early*, 537 U.S. at 8.  "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent,]" *id.*, the state court decision will not be "contrary to" clearly established federal law.  *Id.*  Clearly established federal law, for purposes of § 2254(d), means "the governing principle or principles set forth by the Supreme Court at the time the state court renders its decision."  *Andrade*, 538 U.S. at 72.

C.  <u>Newly Discovered Evidence/Factual Innocence (Ground One)</u>

In his first claim, Poizner contends that newly discovered evidence establishes he is actually and factually innocent of the crimes of which he was convicted.  (Pet at 35-46; Traverse at 3-10.)  As support for this claim, Poizner contends that the filing of a civil lawsuit by Austin and Brandon against Pacific Health Systems shows they had a financial motive for lying at trial.  Poizner also claims that in depositions related to the civil lawsuit, two of Brandon's therapists testified Brandon denied Poizner molested him, Brandon admitted sexually assaulting a girl, stealing a car, and having a troubled relationship with his father before meeting Poizner.  (Pet. at 35-46; Traverse at 3-10.)  Had this information been presented at trial, Poizner contends, he would not have been convicted.

Poizner raised this claim in the petition for review he filed in the California Supreme Court challenging the state appellate courts' denial of his state habeas corpus petition.  (Lodgment No. 12.)  The California Supreme Court denied the petition without citation of authority.  (Lodgment No. 13.)  Thus, this Court must "look through" to the

/ / /

state appellate court opinion denying the claim.  *Ylst*, 501 U.S. at 805-06.  The state appellate court analyzed the claim as follows:

> First, Poizner claims newly discovered evidence proves his innocence. He relies on a post conviction civil action for damages against him and the rehabilitation center filed by two of the boys he molested (Brandon P. and Austin G.) and on the deposition testimony in that action of therapists who testified that Brandon told them we was not molested by Poizner, had a troubled relationship with his father, and was involved in raping a girl. Poizner argues the criminal case against him depended on his accusers' credibility, and this newly discovered evidence proves Brandon and Austin lied at trial because they had a monetary motive to insure Poizner's conviction.  Newly discovered evidence does not justify habeas corpus relief unless it completely undermines the entire structure of the case upon which the prosecution was based and points unerringly to the petitioner's innocence or reduced culpability.  (*In re Lawley* (2008) 42 Cal.4th 1231, 1239; *In re Lindley* (1947) 29 Cal.2d 709, 723.)  As this court noted in the opinion deciding Poizner's appeal, the evidence against him was "abundant and strong"; "the victims testified directly, specifically and unequivocally about the offenses"; Austin's testimony "was corroborated by Poizner's own incriminating admissions"; and "[o]ther boys corroborated some of the conduct between Poizner and Brandon."  Although the newly discovered evidence may undermine the credibility of Austin and Brandon, their credibility was a main issue at trial, and "[e]vidence relevant only to an issue already disputed at trial, which does no more than conflict with trial evidence, does not constitute ' "new evidence" that fundamentally undermines the judgment.' "  (*In re Clark* (1993) 5 Cal.4th 750, 798, fn. 33.)

(Lodgment No. 11 at 2.)

As Respondent correctly notes, whether a freestanding "actual innocence" claim is cognizable under federal habeas law is an open question.  *See District Att'ys Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 71-72 (2009); *House v. Bell*, 547 U.S. 518, 554-55 (2006); *Herrera v. Collins*, 506 U.S. 390, 400-17 (1993).  If such a claim does exist, the Supreme Court has noted a petitioner would have to meet an "extraordinarily high" and "truly persuasive" showing in order to establish he was actually innocent of the charges of which he was convicted.  *Herrera*, 506 U.S. at 417.  The Ninth Circuit has interpreted this "extraordinarily high" showing to mean a petitioner must do more than

1    raise doubt about the conviction, but rather must show affirmative proof of innocence.

2    *Carriger v. Stewart*, 132 F.3d 463, 476 (9th Cir. 1997).

3    　　　　Given the state of the law, Poizner has not established a claim for relief for two

4    reasons.  First, because the Supreme Court has never squarely held that a free-standing

5    actual innocence claim exists, the state court's denial of such a claim cannot be contrary

6    to, or an unreasonable application of, clearly established Supreme Court law.  *See Carey*

7    *v. Musladin*, 549 U.S. 70, 77 (2006); *see also Knowles v. Mirzayance*, 556 U.S. 111, 122

8    (2009); *Alberni v. McDaniel*, 458 F.3d 860, 866 (9th Cir. 2006) (finding that when the

9    Supreme Court has expressly stated that whether a particular claim exists is an open

10   question, the state court cannot be said to have acted in an objectively unreasonable

11   manner by denying that claim).  Thus, Petitioner would be limited to showing the state

12   court's adjudication of this claim involved an unreasonable determination of the facts in

13   light of the evidence presented in state court in order to satisfy 28 U.S.C. § 2254(d).

14   　　　　Second, even assuming a freestanding actual innocence claim exists, Poizner's

15   showing falls well short of establishing affirmative proof of innocence or satisfying 28

16   U.S.C. § 2254(d)(2).  Poizner asserts Austin's and Brandon's joint lawsuit against Pacific

17   Health Systems establishes a "monetary motive to insure Poizner's conviction," and

18   depositions taken of Brandon's therapists during the course of the lawsuit establish

19   Brandon lied at trial about Poizner's molestation.  (Pet. at 38.)  These two pieces of "new

20   evidence," contends Poizner, deprived him of the ability to thoroughly cross examine

21   Brandon and Austin at trial, thus casting doubt on the verdicts.  In addition, Poizner

22   contends that evidence of his poor relationship with his father and evidence he

23   participated in a rape should have been admitted, and that this evidence also establishes

24   the verdicts in Poizner's case are unreliable.

25   　　　　　1. *The Civil Lawsuit*

26   　　　　It is pure speculation that Austin and Brandon, along with their families, hatched a

27   plan or scheme to falsely accuse Poizner of molestation for financial gain, committed

28   perjury to further that plan or scheme, and managed to convince other boys to accuse

Poizner of sexual misconduct and commit perjury as well.  It is much more probable that Austin and Brandon, through their parents, sought compensation for the damage inflicted upon them by Poizner via the civil action against Pacific Health Systems.  It is a reasonable legal tactic for an attorney to wait until criminal proceedings are concluded before filing a civil action in order to ensure any guilty verdict can be used as evidence in the civil lawsuit or a bargaining tool in settlement talks.  Moreover, the facts do not support a conclusion that Brandon and Austin conspired to falsely accuse Poizner of molestation for financial gain.  Brandon testified Austin was "just another student at the rehab," and that he was not a close friend of Austin's.  (Lodgment No. 2, vol. 4 at 524.) Brandon also testified he never discussed his own molestation by Poizner with Austin and Austin never told Brandon that Poizner had molested him as well.  (*Id.* at 562.) Brandon's father testified that after finding out about the molestation allegations against Poizner, he did not suggest anything to the parents of Brandon's friends.  (*Id*. at 639.) Moreover, any effect that knowledge of the lawsuit would have had on the jury's decision is far from clear.  It is possible the jury would have viewed the lawsuit as evidence the boys fabricated the accusations against Poizner for financial gain, as Poizner suggests. But it is much more likely the jury would have viewed the lawsuit as further evidence of the crimes Poizner committed and the victims' desire for compensation.

   In addition, Austin's pretext phone call with Poizner also undermines Poizner's claim.  During the phone call, Austin confronted Poizner about Poizner's actions. Poizner replied that "that's shit's never happened again," and that "if you ever said anything like, like, fuck dude, I'll fucking go to prison forever." (Lodgment No. 1, vol. 1 at 0136, 0138.)  In another exchange, Poizner again reassured Austin that he would not molest him again:

   AG [AUSTIN]: So you know, if I went out with you, you wouldn't
   like be all over my dick and stuff again, right?

   RP [POIZNER]:  Oh, fuck no!

1         AG: Alright.

2

3         RP: No, no, no, no, no.  Never, never again, dude.  Like that's, that
    was just like something that just kind of happened and shit.  Like . . . .

4   (*Id.* at 0138.)

5       Poizner also again told Austin that "if you were ever to say something about

6   it, it would be like, like it would be horrible [so] . . . you would never say anything?"

7   (*Id.* at 0140.)  Austin assured that he would not.  (*Id.*)

8       In sum, the idea that the accusations against Poizner were fabricated by Brandon

9   and Austin for financial gain finds no support in the record or in the materials submitted

10  by Poizner.  Accordingly, they do not support a conclusion that Poizner is actually

11  innocent of the crimes of which he was convicted.

12        2.  *Brandon's Denial of Molestation*

13      Poizner also claims Brandon's statements to his therapist establish he lied at trial

14  about Poizner's acts.  In support of this claim, Poizner provides two depositions taken

15  during the course of the civil lawsuit filed against Pacific Health Systems, one from

16  psychotherapist Bryan Lepinske, LCSW, who treated Brandon in 2010 while Brandon

17  was at Second Nature, a "multidisciplinary therapeutic wilderness program," and one

18  from Dr. Quinten Harvey, who performed a psychological exam on Brandon in 2010

19  while he was at Second Nature.  (Pet'rs Exs. B-C, ECF No. 12.)  During the deposition,

20  Lepinske identified a letter written by Brandon to his father in 2010 in which Brandon

21  stated his father had unfairly blamed Poizner, and that "all [Poizner] had ever did for me

22  was care for me."  (Pet'rs Ex. B at 18.)  When Lepinske was asked whether Brandon had

23  denied Poizner had exhibited any "inappropriate behavior" toward Brandon, Lepinske

24  testified as follows:

25      THE WITNESS:  So this this what I – this is what – what I honestly
recollect.  Based on the question that I hear you asking, you're asking did

26      he at all times categorically deny any inappropriate contact, and what I

27      would say is that he did – the way in which he talked to me about the
dynamics between he and Rob, I recall being concerned there may be what

28

I would consider to be grooming on Rob's part, grooming behavior, which would be considered to be – and in this context, I was – I became concerned that Rob may have been grooming Brandon in a – in what I would consider to be a psychosexual way.

(*Id* at 17.)

Lepinske also testified that he had explained the concept of "grooming" to Brandon.  (*Id.* at 18.)   The United States Department of Justice's National Sex Offender Public Website defines "grooming" as follows:

Grooming is a method of building trust with a child and adults around the child in an effort to gain access to and time alone with her/him.  However, in extreme cases, offenders may use threats and physical force to sexually assault or abuse a child.  More common, though, are subtle approaches designed to build relationships with families. The offender may assume a caring role, befriend the child, or even exploit their position of trust and authority to groom the child and/or the child's family. These individuals intentionally build relationships with the adults around a child or seek out a child who may have fewer adults in her/his life. This increases the likelihood that the offender's time with the child is welcomed and encouraged.

The purpose of grooming is:
- To reduce the likelihood of a disclosure.
- To reduce the likelihood of the child being believed.
- To reduce the likelihood of being detected.
- To manipulate the perceptions of other adults around the child.
- To manipulate the child into becoming a cooperating participant which reduces the likelihood of a disclosure and increases the likelihood that the child will repeatedly return to the offender.

(*See* https://www.nsopw.gov/en.)

Brandon acknowledged Poizner had played pornographic movies for him and had engaged in other grooming behavior with him, but he denied that Poizner had ever touched him in a sexually inappropriately way.  (Pet's Ex. B at 19, 27.)  Lepinske also testified at the deposition that Brandon told Lepinske he was concerned Poizner had molested a friend of his, Colten (another of Poizner's victims).  (*Id.* at 27)  Lepinske / / /

suspected that despite Brandon's denials it was likely Brandon had been molested by Poizner.  (*Id.* at 26.)

Dr. Harvey testified that at his initial meeting with Brandon, he denied Poizner had sexually molested him.  (Pet'rs Ex. C at 37, 42.)  Like Lepinske, Harvey considered the relationship between Poizner and Brandon "a concern that should be continued to be focused on." (*Id.* at 45.)  When asked to explain, Harvey stated as follows:

> Well, not only is it an issue in psychological treatment in general but my experience, specifically.  It is not uncommon for those who have been a victim of either sexual exploitation or manipulation, molestation, and abuse that they often conceal or withhold information regarding what took place, for a variety of reasons, and that there seemed to be enough questions here that people were raising a number of questions.
>
> It was a relationship that seemed – well, questionable, that at this point there was nothing to substantiate or specifically identify it would have taken place, but there's enough concern here to continue to track and deal with what might be.

(*Id.* at 46.)

Thus, even though Brandon denied during his therapy sessions that Poizner had molested him, when viewed in context with the therapists' expert opinion, evidence of Brandon's denials would not have assisted Poizner in his defense.  Both therapists felt the relationship between Poizner and Brandon was inappropriate and concerned them.  If evidence of Brandon's denials had been admitted, the prosecution would have presented expert testimony characterizing Poizner's behavior as "grooming" and explaining the reasons why victims of molestation sometimes deny the molestation occurred.  Moreover, contrary to Poizner's claim that none of this evidence was before the jury, Brandon was asked about his time at Second Nature at trial.  When he was told about Poizner's arrest while at Second Nature, Brandon told his father and employees of Pacific Health that Poizner had never touched him.  (Lodgment No. 2, vol. 4 at 594-95.)  When asked why he had done so, Brandon testified he "wanted it to be that Rob would be safe and that he would be able to see me still and that I wouldn't have to see my dad." (*Id.* at 605-06.)

23

He told his dad that nothing had happened between him and Poizner because he "wanted to get [his dad] in trouble for the – for making false accusations." (*Id.* at 606.) He denied that his therapists at Second Nature suggested to him that Poizner had molested him and admitted that when his therapists asked "Did anything honestly ever happen with you [and Poizner]?" he told them "'Well, a few touchings, that's it, but like nothing big.' That's what I told them at the time." (*Id.*)

Evidence of Brandon's denial that Poizner molested him would not have assisted Poizner in his defense, nor does it establish he is actually innocent of the charges of which he was convicted. Further, evidence that Brandon had denied Poizner had molested him during his contact with his therapists at Second Nature was before the jury. Any further evidence about Brandon's denials would not have changed the outcome of the trial in the face of testimony by Brandon and other victims of Poizner.

### 3. *Brandon's Relationship With His Father*

Next, Poizner contends that evidence he had a troubled relationship with his father prior to meeting Poizner is "new evidence" gleaned from the depositions of Brandon's Second Nature therapists. Poizner contends this evidence would have helped establish Poizner's actual innocence because Brandon's father testified Brandon pulled away from him and started bonding with Poizner, and because the prosecutor argued Poizner pitted Brandon against his father. (Pet. at 42.) Whether Brandon's poor relationship with his father began before or after Brandon met Poizner is a collateral issue that likely had very little effect on the jury's decision whether Poizner committed the acts against Brandon and the other victims. In any event, it was clear from the evidence presented at trial that Brandon and his father had longstanding difficulties in their relationship. Brandon testified he got along better with his mother than his father because his father was stricter and his mother let him do what he wanted. (Lodgment No. 2, vol. 4 at 519-20.) Brandon's father testified that prior to Brandon's entry into the Pacific Health Systems program, his divorce from Brandon's mother "had done a number on [Brandon]," that the divorce "had been difficult for [Brandon]," and that his relationship with Brandon was

1   strained before Brandon entered the Pacific Health Systems program.  (*Id.* at 611, 620.)

2   Brandon's father also testified that Brandon was acting out and using drugs before the

3   program, and that he was the "tough guy" parent who convinced Brandon's mother to

4   enter Brandon into the rehab program at Pacific Health Systems.  (*Id.* at 620-21.)

5            4.  *Brandon's Commission of Crimes of Moral Turpitude*

6            Finally, Poizner contends that evidence Brandon committed a rape and had stolen a

7   car is also "new evidence" supporting his innocence.[4]  Poizner argues this evidence

8   would have helped establish his actual innocence because rape is a crime of moral

9   turpitude and the case turned on credibility.  Poizner contends that had evidence of

10  Brandon's commission of a rape and stealing a car been admitted at trial, he would have

11  been able to show Brandon lied.[5]  (Pet. at 43-44.)

12           It is true that such information may have served to undermine Brandon's

13  credibility.  But that is not the standard for overturning a conviction on federal habeas

14  corpus review for actual innocence.  As stated above, even if a free standing actual

15  innocence claim a petitioner would have to make an "extraordinarily high" showing,

16  meaning a petitioner must do more than raise doubt about the conviction, but rather must

17  show affirmative proof of innocence.  *Herrera*, 506 U.S. at 417; *Carriger*, 132 F.3d at

18  476.  Poizner's showing does not meet that standard.  He only presents evidence that may

19  or may not have cast sufficient doubt on Brandon's testimony.

20  / / /

21  / / /

22  _____

23  [4] Brandon was convicted of joyriding, not auto theft, in that incident.  (Pet'rs Ex. C at 39.)

24
25  [5] Poizner also argues that "[b]ecause Poizner did not have the information about Brandon's offenses, Poizner's constitutional rights to present a defense and to cross-examine witnesses was violated."  (Pet. at 44.)  The suppression by the prosecution of impeachment material over which they have sole access

26  may form the basis for a prosecutorial misconduct claim.  *See Brady v. Maryland*, 373 U.S. 83 (1963); *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).  But Poizner does not make that claim here.  No action

27  by the trial court prevented Poizner's counsel from presenting evidence of the alleged rape and joyriding, and thus Poizner's Sixth Amendment rights to present a defense and cross examine witnesses

28  were not impinged.

5.  *Poizner Has Made An Insufficient Showing of Actual Innocence*

Assuming there exists a free standing actual innocence claim under the Federal Constitution, none of the "new evidence" presented by Poizner establishes "affirmative proof" of his innocence to satisfy the *Herrera* standard.  Poizner presents only speculation and possible additional impeachment material that could have been presented at trial.  *See Herrera,* 506 U.S. at 417; *Carriger*, 132 F.3d at 476.  Accordingly, the state court's adjudication of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law, and was not based on an unreasonable determination of the facts.  As such, this claim is **DENIED**.

D.  Sufficiency of the Evidence of Poizner's Age (Ground Two)

Poizner next contends there was insufficient evidence to establish the age difference requirement for his convictions of Penal Code §288(c)(1) in counts twelve and thirteen.  (Pet. at 49-50; Traverse at 18-21.)  Respondent contends the claim is procedurally defaulted, and, in any event, lacks merit because Brandon's opinion of Poizner's age, coupled with the jury's perception of Poizner's appearance, is sufficient under California law to support the jury's verdict.  (Mem. of P. & A. Supp. Answer at 26-29.)

Poizner raised this claim in the petition for review from the denial of his state habeas corpus petition, which he filed in the California Supreme Court.  (Lodgment No. 12.)  The state supreme court denied the petition without citation of authority.  Accordingly, this Court must "look through" to the state appellate court opinion denying this claim as the basis for its analysis.  The state appellate court addressed the claim as follows:

> Second, Poizner argues the charges underlying two of his lewd or lascivious act convictions, where were based on his touching Brandon's penis and buttocks when Brandon was 14 years old, must be dismissed because the prosecutor did not prove Poizner was "at least 10 years older than [Brandon]."  (Pen. Code, § 288, subd. (c)(1).) . . . [T]he required statutory age difference appears to have been satisfied.  According to the date of birth listed for Poizner on the accusatory pleading and the abstract

of judgment, he was 39 or 40 years old when he committed the charged offenses.

(Lodgment No. 11 at 2-3.)

In assessing a sufficiency of the evidence claim on federal habeas review, the Supreme Court has stated that "'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Juan H. v. Allen*, 408 F.3d 1262, 1275 (9th Cir. 2005) (quoting *Jackson*, 443 U.S. at 319). In determining whether sufficient evidence has been presented, the Court must accept the elements of the crime as defined by state law. *See Jackson*, 443 U.S. at 324, n. 16. Penal Code § 288(c)(1) states:

> Any person who commits an act described in subdivision (a) with the intent described in that subdivision, and the victim is a child of 14 or 15 years, and that person is at least 10 years older than the child, is guilty of a public offense and shall be punished by imprisonment in the state prison for one, two, or three years, or by imprisonment in a county jail for not more than one year. In determining whether the person is at least 10 years older than the child, the difference in age shall be measured from the birth date of the person to the birth date of the child.

Cal. Penal Code § 288(c)(1) (West 2010).

Under California law, the jury was permitted to find Poizner's age based on circumstantial evidence. *See People v. Castaneda*, 31 Cal. App. 4th 197, 203-04 (1994) (stating that proof of age need not be in documentary form and that testimony about a defendant's age, coupled with the jury's observation of the defendant, is sufficient for the trier of fact to infer age) (citing *People v. Montalvo*, 4 Cal. 3d 328, 335 (1971).) In Poizner's case, Nanette Konopacky, Poizner's roommate, testified Poizner was in his late thirties. (Lodgment No. 2, vol. 4 at 510.) Brandon testified Poizner was 39 or 40 years old. (*Id.* at 519, 582.) Under California law, the jury was permitted to use their observation of Poizner and the testimony of Konopacky and Brandon to determine whether Poizner was ten years older than the 12-14 year old children he was accused of

molesting.  A reasonable trier of fact could have found the ten-year age difference element of Penal Code § 288(c)(1) beyond a reasonable doubt.  *See Juan H.*, 408 F.3d 1262, 1275.

The state court's resolution of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law, and was not based on an unreasonable determination of the fact.  Thus, the Court **DENIES** relief as to this claim.

E.  Exclusion of Character Evidence (Ground Three)

In ground three, Poizner contends the trial court violated his right to present a defense by ruling that, should Poizner present character evidence in the form of testimony regarding his lack of propensity to commit the offenses, it would open up the door for the prosecution to present several pieces of evidence the court had excluded, including evidence the Poizner had snuck into people's homes and molested other children.  (Pet. at 51-64; Traverse at 22-25; Lodgment No. 2, vol. 2 at 113-14.)  Respondent counters that the trial court applied California evidentiary law correctly, and, in any event, there is no Supreme Court precedent directly addressing the question whether a defendant's federal constitutional due process rights are violated by a trial court's error in applying its own evidentiary rules.  (Mem. of P. & A. Supp. Answer at 32.)

Poizner raised this claim in the petition for review from the denial of his state habeas corpus petition, which he filed in the California Supreme Court.  (Lodgment No. 12.)  The state supreme court denied the petition without citation of authority. Accordingly, this Court must "look through" to the state appellate court opinion denying this claim as the basis for its analysis.  The state appellate court denied the claim, as follows:

> Third, Poizner complains he was prevented from putting on evidence of his good character and lack of propensity to molest young boys by the trial court's erroneous ruling that if he did so, the character witnesses could be cross-examined about their knowledge of incidents of molestation, including those recorded in Poizner's private journal . . . .  Poizner's

complaint has no merit.  "It is well established that, '[w]hen a defense witness, other than the defendant himself, has testified to the reputation of the accused, the prosecution may inquire of the witness whether he has heard of acts or conduct by the defendant inconsistent with the witness'[s] testimony.'  [Citation.]  So long as the People have a good faith belief that the acts or conduct about which they wish to inquire actually took place, they may so inquire."  (*People v. Siripongs* (1988) 45 Cal.3d 548, 578; accord, *People v. Hinton* (2006) 37 Cal.4th 839, 902.)

(Lodgment No. 12 at 3.)

During trial, counsel explained to the trial court who he proposed to have testify and what those witnesses would say as follows:

MR. CARLOS:  Well, your honor, I have a number of [character witnesses], and I've given that discovery to the prosecution.  The proposed testimony would be parents and actual sponsees who have worked with Mr. Poizner and basically performed very well during their mentoring program. They could talk about their own contact with Mr. Poizner, which essentially – I mean, he does hug them, he does get close to them, and that was just a normal part of his routine as a sponsor in that program.

The problem here, your honor, is that I think the jury may be led to believe that –

THE COURT:  Before you go on to arguing it, I just want to make sure what they would say.  So "he was a nice sponsor.  He did hug me and was close to me, but he didn't molest me"?

MR. CARLOS:  Well, obviously I would not go there because if I did that, then that would be the improper character testimony I think that you were talking about . . . I wouldn't go to whether or not "he did didn't molest me."  They would say, "This is the contact he had with me.  This is the type of contact.  It was normal contact.  He helped me through my alcohol or substance abuse problems."

Parents will testify that "I met him.  I was comfortable with what he was doing with my son.  He wasn't" – I mean, "He was not inappropriate from what I could tell," not that he didn't molest them.

THE COURT: Go ahead and finish your thoughts then.  I don't quite understand.  If you're saying, "He wasn't inappropriate with my son,"

aren't you saying "He didn't molest my son"?  Isn't that what they're saying?

MR. CARLOS:  No, I didn't say that.  I didn't – they could say, "I didn't see anything inappropriate."  I'm not going to ask the children whether they were actually molested. . . .

. . . .

I think that I'm in sort of a bind here because I can't present testimony from people from the program saying that, you know, "Yeah, Mr. Poizner, this is what he did.  This is how he did it with these people and people went through it with flying colors, at least the people that he worked with."  I've got a couple of those ready to go.  Obviously, I wouldn't put everybody on but at least a couple to show that he was a capable sponsor.

. . . .

THE COURT:  Ms. Weismantel, do you want to be heard?

MS. WEISMANTEL:  Yes, your Honor.  I think he's – I mean, he's basically wanting to put on character evidence that this man doesn't have the characteristics of a child molester because he behaved a certain way with these kids and he didn't molest them, so I think it does open the door for me to ask him, "Well, have you heard that he touched, you know, Austin?  Have you heard that he admitted doing certain things to Austin, on a pretext phone call?  Have you heard that Mr. Poizner wrote about things that he did to somebody that was sleeping" – meaning James – "Have you heard that he touched" –

. . . .

THE COURT:  Okay, I've – and maybe I've said this before, but I do think that it is appropriate for you, [Mr. Carlos,] if you wish, to put on an expert, somebody, to talk about what the sponsor/sponsoree relationship is like in general, what the boundaries of that are and that with young kids it's common for them to have routine contact, for them to call back and forth.  It may even be common for them to do some physical touching between them, hugging, et cetera.  That's one thing.

I think – I'm not precluding you from putting that on to explain to the jury that this is a typical sponsor/sponsee relationship or what one is.

I think that's different from putting on a specific parent or child that the defendant sponsored to say, "He was my sponsor and nothing inappropriate happened to me." That's different. That is putting on – it's attempting to put on character evidence, trying to use it perhaps by another name but still attempting to put on character evidence in two ways inappropriately. I think it's specific acts, and that's precluded by evidence code section 1102, I think.

You can put on character evidence. I'm not saying you can't do that. You can put on someone to say – you can put on any of these parents to say, "I knew him. He had a relationship with my child. They were together for" – however many times – "and in my opinion, based on what I know of him, he is not the type of person to molest a child." You can do that.

I'm not precluding you from putting on character evidence, but it has to be the right type of character evidence. Under 1102 it's opinion evidence or reputation evidence, not specific acts, so that's your choice.

MR. CARLOS: Right. And just so we're clear on the court's ruling, should I do the opinion evidence, then everything that was excluded from the journal is admissible?

THE COURT: That's the next step that I wanted to go to. If you put on that opinion evidence, what can be used in the have-you-heard type questions by Ms. Weismantel, and I don't think I ruled on that yet. I said certainly it opens the door.

I think I'm still required to do a 352 analysis on that, and so that's what I wanted to make clear on the record, that I have done that; I've given some thought to that.

It certainly allows Ms. Weismantel to ask these witnesses if they've heard or are aware of any of the allegations that the kids have testified to here. That's evidence before the jury, so that includes the "Dear James" letter, it includes the "Homeboy" letter, and it includes all of the evidence that the kids have testified to. That is fair game.

. . . .

There are other things in his journals that I do think I have previously kept out in his case in chief but would be fair questions to ask a character

witness. . . . [¶] . . . If a character witness is going to say he is not of a character to molest a child, his specific statements in that regard would be relevant to ask about.

The "boundaries" entry which I kept out in the People's case in chief where he talks about not being able to hang out with underage newcomers, not being to talk about masturbation and sex, that is fair game for a character witness.  It goes specifically to whether or not he has a character trait of molesting children . . . . [¶]. . . Mr. Carlos, from a logical standpoint, you can't put a witness on to say, "I think he does not have the character for molesting children" when he has specifically written about molesting children and not be able to ask about that.

(Lodgment No. 2, vol. 5 at 833-41.)

To the extent Poizner is attacking the state court's interpretation and application of its own rules of evidence, he is not entitled to relief.  *Estelle*, 502 U.S. at 67-68; *see also* 28 U.S.C. § 2254(a).  Simply claiming that a state court's improper application of state law violated a petitioner's due process rights does not transform the claim into a federal one.  *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996).  Moreover, the state trial judge's ruling was correct under state law.  *See People v. Hinton*, 37 Cal. 4th 839, 902 (2006) (stating that "[w]hen a defense witness gives character testimony, the prosecutor may inquire of the witness whether he or she has heard of acts or conduct by the defendant inconsistent with that testimony, so long as the prosecutor has a good faith belief that such acts or conduct actually took place") citing *People v. Barnett*, 17 Cal. 4th 1044, 1170 (1998).

Contrary to Poizner's claim, no evidence was actually excluded by the trial judge and he was not prevented from presenting any evidence in his defense.  Clearly established federal law holds that the right to present evidence and witnesses is essential to due process and is guaranteed by the compulsory process clause of the Sixth Amendment.  *Taylor v. Illinois*, 484 U.S. 400, 409 (1988); *Chambers v. Mississippi*, 410 U.S. 294 (1973); *Washington v. Texas*, 388 U.S. 14, 19 (1967); *Dunham v. Deeds*, 954 F.2d 1501, 1503 (9th Cir. 1992).  But "[t]he defendant's right to present evidence . . . is

not absolute." *Perry v. Rushen*, 713 F.2d 1447, 1450 (9th Cir. 1983). A defendant "must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Chambers*, 410 U.S. at 302. The exclusion of defense evidence is error only if it renders the state proceeding so fundamentally unfair as to violate due process. *Estelle*, 502 U.S. at 67; *Bueno v. Hallahan*, 988 F.2d 86, 87 (9th Cir. 1993). Here, no such fundamentally unfair proceeding occurred. Rather, counsel made a strategic decision not to present character witnesses because, had he done so, the prosecutor would have been able to ask those witnesses about the accusations leveled against him by the victims as well as evidence from Poizner's journals, which the judge had previously excluded, establishing he had broken into houses and touched or looked at young boys. (Lodgment No. 2, vol. 5 at 839.) The trial judge simply properly applied a standard rule of the California Evidence Code in Poizner's case.

Poizner claims the trial judge's ruling was improper because had defense counsel presented character witnesses on behalf of Poizner, the trial judge would have permitted the prosecutor to cross examine them with "guilt assuming hypotheticals," which Poizner contends violates due process. (Pet. at 34-36.) The case law Poizner cites as support for this claim are circuit court cases. Poizner had not cited any clearly established Supreme Court law holding that "guilt assuming hypotheticals" violate due process, nor has this Court located any. Without such authority, this Court cannot conclude the state court's denial of the claim was contrary to, or an unreasonable application of, clearly established Supreme Court law. *See Musladin*, 549 U.S. at 77.

Moreover, the cases Poizner cites are distinguishable. In *United States v. Shwyader*, 169 F.3d 1109, 1114-15 (9th Cir. 2002), the prosecutor improperly asked the defendant's character witnesses whether their opinion would change if the defendant had committed the acts alleged in the indictment. In *United States v. Candelaria-Gonzalez*, 547 F.2d 291, 294 (5th Cir. 1977), the prosecutor improperly asked character witnesses whether their opinion of the defendant would change if he were convicted of the crimes

for which he was being prosecuted.  In *United States v. Barta*, 888 F.2d 1220, 1224-25 (8th Cir. 1989), the court condemned the prosecutor when he asked whether the defendant's character witness's opinion would change if he knew the defendant "had lied on his income tax return," the charge for which he was on trial.  In *United States v. Polsinelli*, 649 F.2d 793, 795 (10th Cir. 1981), the prosecutor asked a character witness if her opinion would change if "she 'knew that on at least two occasions during April of 1979 [Polsinelli] distributed one ounce quantities of cocaine,'" again, the charge for which he was being prosecuted.  *See also United States v. Oshatz*, 912 F.2d 534 539 (2nd Cir. 1990) (prosecutor asked whether character witness's opinion would change if he knew defendant had committed the acts alleged in the indictment).[6]  In contrast, the trial judge in Poizner's case indicated that the prosecutor would be permitted to ask Poizner's character witnesses "if they've heard or are aware of the allegations that these kids have testified to here."  (Lodgment No. 2, vol. 5 at 838.)  The judge also indicated the prosecutor could ask character witnesses about the previously excluded journal entries in which Poizner admitted to breaking into homes to observe children sleeping or observe their bodies.  (*Id.* at 839.)  None of the permitted questions included the kind of guilt assuming hypotheticals considered in the circuit court cases cited by Poizner.

For all the foregoing reason, the Court concludes the state court's rejection of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.  *Williams*, 529 U.S. 412-13.  Nor was it based on an unreasonable determination of the facts.  The claim is **DENIED**.

F.  Jury Instructions and the Burden of Proof (Ground Four)

In ground four, Poizner contends the trial court's modification of the jury instructions for the charged allegations reduced the prosecution's burden of proof, thereby violating Poizner's due process and fair trial rights.  (Pet. at 65-72; Traverse at

---

[6]  Poizner also cites *United States v. Pirani*, 406 F.3d 543 (8th Cir. 2005) as support for his argument.  The court in that case, however, did not conclude that the prosecutor's questions were improper.  *See id.* at 554.

34

26-28.)  Respondent counters that the instructions adequately informed the jury of its obligation to find that the allegations were true beyond a reasonable doubt, and that the state appellate court's decision denying this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.  (Mem of P. & A. Supp. Answer at 35-36.)

Poizner raised this claim in the petition for review, filed in the California Supreme Court, from the denial of habeas corpus petition he filed in state court.  (Lodgment No. 12.)  The California Supreme Court denied the petition without citation of authority (Lodgment No. 13.)  Accordingly, this Court must "look through" to the California Appellate Court's denial of this claim as the basis for its analysis.  That court wrote:

> Fourth, Poizner contends the trial court deprived him of his due process right to a fair trial by lowering the People's burden of proof with respect to allegations that Poizner used obscene matter during the commission of certain offenses.  (Penal Code, §1203.066, subd. (a)(9)), committed an offense against more than one victim (*id.*, § 667.61, subd. (e)(4)), committed a felony while released on bail (*id.*, § 12022.1, subd. (b)), and had substantial sexual conduct with a victim under the age of 14 years (*id.*, § 1203.066, subd. (a)(8)).  Specifically, Poizner contends "the trial court instructed the jury on [each] allegation but omitted the reasonable doubt portion of the instruction.  Then, after reading several allegations, the trial court read to the jury a modified reasonable doubt instruction."  This contention, like the preceding two, could have been asserted on appeal but was not, and is therefore procedurally barred.  (*In re Reno*, *supra*, 55 Cal. 4th at p. 490; *In re Dixon*, *supra*, 41 Cal.2d at p. 759.)  Also like the prior contentions, this one lacks merit.  Immediately after the trial court read the instructions on the various allegations, the court told the jury:  "As with the crime, the People have the burden of proving beyond a reasonable doubt the truth of each allegation.  If you have a reasonable doubt that an allegation is true, you must find it to be not true."  The jury was also given written copies of these instructions.  Jurors are presumed to able to correlate instructions; and instructions are adequate where, as here, read as a whole they correctly advise the jury of the applicable law.  (*People v. Guerra* (2006) 37 Cal.4th 1067, 1148; *People v. Ramos* (2008) 163 Cal.App.4th 1082, 1089.)  The trial court therefore was not required to tell the jury four separate times (once for each allegation) that the People had to prove the allegation beyond a reasonable doubt, and appellate counsel did not provide

1
2

ineffective assistance by not arguing otherwise on appeal.  (*Constancio*, *supra*, 42 Cal.App.3d at p. 546 [counsel not required to make meritless argument].)

3

4

(Lodgment No. 11 at 4.)

5

6

The Supreme Court addressed the necessity of instructing a jury on the prosecution's burden of proof in *Carella v. California*, 491 U.S. 263 (1989):

7

8

9

10

11

12

13

The Due Process Clause of the Fourteenth Amendment denies States the power to deprive the accused of liberty unless the prosecution proves beyond a reasonable doubt every element of the charged offense. *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970). Jury instructions relieving States of this burden violate a defendant's due process rights. *See Francis v. Franklin*, 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985); *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). Such directions subvert the presumption of innocence accorded to accused persons and also invade the truth-finding task assigned solely to juries in criminal cases.

14

*Id.* at 266.

15

16

17

18

19

20

21

An instructional error can form the basis for federal habeas corpus relief only if it is shown that "'the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.' [citation omitted]."  *Murtishaw v. Woodford*, 255 F.3d 926, 971 (9th Cir. 2001) (citing *Cupp v. Naughten*, 414 U.S. 141, 146 (1973)); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977).  The allegedly erroneous jury instruction cannot be judged in isolation, however.  *Estelle*, 502 U.S. at 72.  Rather, it must be considered in the context of the entire trial record and the instructions as a whole.  *Id.*

22

23

24

25

26

27

28

The trial judge in Poizner's case decided to simplify the instructions by placing the "beyond a reasonable doubt" instruction at the end of the instructions for all the allegations instead of repeating the instruction for each allegation.  Poizner contends the trial judge reduced the burden of proof on the prosecution by altering the language of the reasonable doubt instruction for the allegations from "[t]he People have the burden of proving this allegation beyond a reasonable doubt.  *If you find the People have not met this burden*, you must find that this allegation has not been proved" to "[t]he People have

the burden of proving this allegation beyond a reasonable doubt.  *If you have a reasonable doubt the allegation is true*, you must find it not to be true."  (Pet. at 68-69) (italics added).

Poizner's claim is meritless.  The jury was clearly told the prosecution had the burden of proving the allegations beyond a reasonable doubt.  (Lodgment No. 1, vol. 1 at 0198.)  In addition, they were told that "[w]henever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt."  (*Id.* at 0157.)  Poizner does not explain how the two phrases "the People have the burden of proving [the allegations] beyond a reasonable doubt[, and] if the People have not met this burden, you must find the allegation has not been proved" and "The People have the burden of proving beyond a reasonable doubt the truth of each allegation[, and] if you have a reasonable doubt that an allegation is true, you must find it not to be true," differ in any substantial way.  "The Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course."  *Victor v. Nebraska*, 511 U.S. 1, 5 (1994).  "[T]he proper inquiry is not whether the instruction 'could have' been applied in an unconstitutional manner, but whether there is a reasonable likelihood that the jury did so apply it."  *Id.* at 6, citing *Estelle*, 502 U.S. at 72.  Here, there is no reasonable likelihood the jury found the allegations to be true based on a standard lower than beyond a reasonable doubt.  They were repeatedly instructed that in order to find Poizner guilty of the crimes and to find the allegations to be true, they must do so beyond a reasonable doubt.  Accordingly, the Court concludes the state courts' resolution of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.  It was also not based on an unreasonable determination of the facts.  The claim is **DENIED**.

G. <u>Cruel and Unusual Punishment (Ground Five)</u>

Next, Poizner argues his sentence of 75 years-to-life plus seven years violates the Eighth Amendment.  (Pet. at 73-78; Traverse at 29.)  Respondent counters the state

/ / /

court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.  (Mem. of P. & A. Supp. Answer at 36-39.)

Poizner raised this claim in the petition for review he filed in the California Supreme Court challenging the appellate court's denial of his habeas corpus petition. (Lodgment No. 12.)  That court denied the petition without citation of authority. (Lodgment No. 13.)  Accordingly, this Court must "look through" to the state appellate court's opinion addressing this claim as the basis for its analysis.  *Ylst*, 501 U.S. at 805-06.  That court wrote:

> Fifth and finally, Poizner claims imposition of five consecutive prison terms of 15 years to life each, pursuant to Penal Code section 667.61, is so grossly disproportionate to his culpability that it violates constitutional bans on cruel and/or unusual punishment.  (U.S. Const., 8th Amend.; *Robinson v. California* (1962) 370 U.S. 660, 666-667 [applying 8th Amend. Ban to states through 14th Amend.]; Cal. Const., art. I, § 17.)  Once again, the claim is procedurally barred because Poizner could have raised it on appeal but did not.  (*In re Reno*, *supra*, 55 Cal.4th at p. 490; *In re Dixon*, *supra*, 41 Cal.2d at p. 759.)  The claim also fails on the merits.  "Successful grossly disproportionate challenges are ' "exceedingly rare" ' and appear only in an ' "extreme case." (*People v. Em* (2009) 171 Cal.App.4th 964, 977.)  This is not such a rare or extreme case.  Poizner was convicted of 10 counts of committing lewd or lascivious acts on three boys who were 14 years old or younger, despicable crimes the Legislature has determined deserve severe punishment.  Poizner's prison sentence, though long, is not "so disproportionate to the crime[s] for which it [was] inflicted that is shocks the conscience and offense fundamental notions of human dignity." (*In re Lynch* (1972) 8 Cal.3d 410, 424.)  Indeed, California appellate courts repeatedly have rejected cruel and/or unusual punishment challenges to lengthy prison sentence imposed pursuant to Penal Code section 667.61. (*People v. Perez* (2013) 214 Cal.App.4th 49, 60; *People v. Meneses* (2011) 193 Cal.App.4th 1087, 1092-1094; *People v. Alvarado* (2001) 87 Cal.App.4th 178, 199-201; *People v. Estrada* (1997) 57 Cal.App.4th 1270, 1277-1282; *People v. Crooks* (1997) 55 Cal.App.4th 797, 804-809.)

(Lodgment No. 11 at 4.)

In *Andrade*, the Supreme Court concluded that the only clearly established legal principle that could be discerned from the Court's Eighth Amendment jurisprudence was

that "[a] gross disproportionality principle is applicable to sentences for a term of years . . . [T]he precise contours of [the principle] are unclear, [and it is] applicable only in the 'exceedingly rare' and 'extreme' case." *Andrade*, 538 U.S. at 72-73 (citing *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991)).  The Supreme Court also explained that "the governing legal principle gives legislatures broad discretion to fashion a sentence that fits within the scope of the proportionality principle . . . ." *Id.* at 76 (quoting *Harmelin*, 501 U.S. at 998).  Because of this, "[t]he gross disproportionality principle reserves a constitutional violation for only the extraordinary case." *Id.* at 77.

The Ninth Circuit has applied these principles and has given this Court some guidance as to the kind of "exceedingly rare" Eighth Amendment claim that warrants federal habeas relief.  *See Duhaime v. Ducharme*, 200 F.3d 597, 600 (9th Cir. 2000) ("[Ninth Circuit] cases may be persuasive authority for purposes of determining whether a particular state court decision is an 'unreasonable application' of Supreme Court law, and also may help us determine what law is 'clearly established.'").  In *Ramirez v. Castro*, 365 F.3d 755, 775 (9th Cir. 2004), the court concluded that a sentence of twenty-five years to life for a nonviolent shoplifting of a $199.00 VCR where the defendant's prior convictions were two nonviolent second degree robberies, violated the Eighth Amendment.  The Ninth Circuit struck down a sentence of twenty-eight years to life imposed on a defendant who had failed to update his sex offender registration within five days of his birthday.  *Gonzalez v. Duncan*, 551 F.3d 875 (9th Cir. 2008).  The Court found that there was no "rational relationship between Gonzalez's failure to update his sex offender registration annually and the probability that he will recidivate as a violent criminal or sex offender." *Id.* at 887.  Without a rational connection between Gonzalez's past behavior and his current conviction, there was no justification for an increased sentence for the "passive, harmless and technical violation of the registration law." *Id.* at 885.

The Ninth Circuit has upheld sentences, however, in cases where either the triggering offense or the defendant's prior record involve violence or the threat of

violence.  Thus, in *Rios v. Garcia*, 390 F.3d 1082 (9th Cir. 2004), the court concluded that a sentence of twenty-five years to life for a conviction for a felony petty theft did not violate the Eighth Amendment because Rios "struggled with the loss prevention officer and tried to avoid apprehension . . . . [H]is prior robbery 'strikes' involved the threat of violence because his cohort used a knife . . . . Rios [had] a lengthy criminal history, beginning in 1982, and he ha[d] been incarcerated several times." *Id.* at 1086.  In *Taylor v. Lewis*, 460 F.3d 1093 (9th Cir. 2006), the court upheld a sentence of twenty-five years to life for felony possession of cocaine and misdemeanor possession of drug paraphernalia.  Although the triggering offense was nonviolent, Taylor's prior convictions included second-degree burglary, robbery with a firearm, and voluntary manslaughter with the use of a weapon.  *Id.* at 1100.

Finally, the Ninth Circuit upheld a life sentence without parole in *Norris v. Morgan*, 622 F.3d 1276 (9th Cir. 2010) for child molestation conviction under Washington's "two strikes" law.  In conducting de novo review of Norris' Eighth Amendment challenge on habeas review, the Court began by analyzing whether "'the crime committed and the sentence imposed leads to an inference of gross disproportionality.'"  *Norris*, 622 F.3d at 1290 (quoting *Harmelin*, 501 U.S. at 1005).  The "harshness of the penalty imposed upon the defendant" is to be compared to "the gravity of the triggering offense," and a court can consider the state's justification for the sentencing scheme and "the actual harm caused to his victim or to society."  *Id.* (citations omitted).  The Ninth Circuit noted that in determining the gravity of the offense, courts are to "look beyond the label of the crime" and examine the "factual specifics" of it.  *Id.* (citing *Reyes v. Warden*, 399 F3d 964, 969 (9th Cir. 2005) and *Ramirez*, 365 F.3d at 768).  Norris' crime involved touching a five-year-old girl on her genitalia over her clothes for a few seconds.  Nevertheless, the Court found the fact that the crime was committed against a person pivotal:

> Norris' offense is undisputably not "one of the most passive crimes a person
> can commit," like the utterance of a $100 "no account" check in *Solem*, 436

U.S. at 296 [citation omitted], or the nonviolent petty theft of a $199 VCR in *Ramirez*, 365 F.3d at 768.  Nor does Norris' offense conduct amount to an "entirely passive, harmless, and technical violation" of a regulatory offense like the offender's failure to timely update his sex offender registration in *Gonzalez*, 551 F.3d at 886.  Norris committed an offense against a person rather than property, *see Solem*, 463 U.S. at 293 [citation omitted] (noting that criminal law is more protective of people than property), and against a five-year-old child rather than an adult. . . . [W]e are aware of no case in which a court has found a defendant's term-of-years sentence for a non-homicide crime *against a person* to be grossly disproportionate to his or her crime.

. . . .

Furthermore, "[t]he impact of [child molestation] on the lives of [its] victims is extraordinarily severe . . . . "[W]e and our sister circuits have [therefore] consistently held that sexual offenses [by older adults] against younger children constitute 'crimes of violence.'"  *United States v. Medina-Villa*, 567 F.3d 507, 515 (9th Cir. 2009).

*Norris*, 622 F.3d at 1293-94.

The Ninth Circuit has also upheld harsh and lengthy sentences in several unpublished cases similar to Poizner's.[7]  In *Poslof v. Yates*, 462 Fed. Appx. 710 (9th Cir. 2010), the Court upheld a sentence of 27 years-to-life for failing to register a new residence as a sex offender in the face of an Eighth Amendment challenge.  In *Blakaj v. McEwan*, 2013 WL 3811813 (9th Cir. 2013), the Court upheld a sentence of 30 years-to-life for various sexual offenses against several victims under California's "one strike" law, the same sentencing scheme under which Poizner was sentenced.  The *Blakaj* court noted:

Petitioner's current convictions are for [sexual crimes] – involving multiple victims.  These current offenses, involving crimes against multiple victims occurring in a single evening, are more serious than the petty theft convictions in *Andrade*, the shoplifting conviction in *Ewing*, the uttering

---

[7] Pursuant to Ninth Circuit Rule 36-3(c), "Unpublished decisions and orders of [the Ninth Circuit] issued on or after January 1, 2007 may be cited to the courts of this circuit in accordance with FRAP 32.1."

41

false check conviction in *Solem*, and the obtaining money under false pretenses conviction in *Rummel*, none of which were even crimes against persons . . . . Further, they were not victimless crimes or of a minor nature.

*Id*. at *19.

Poizner's crimes, like the defendants in *Norris* and *Blakaj*, are serious, sexual crimes against multiple juvenile victims.  They are not "passive," "harmless," or "technical violations" of a regulatory offense.  Rather, they are intentional harms committed upon young boys who were vulnerable due to their substance abuse issues and who looked to Poizner as a trusted adult in their lives.  Poizner abused his victims and violated the trust they placed in him for his own pleasure, and thus his case is not the "exceedingly rare" instance where the sentence is disproportionate to the crime.  Thus, the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.  Nor was it based on a unreasonable determination of the facts.  For the foregoing reasons, the claim is **DENIED.**

H.  Erroneous Admission of Uncharged Acts (Ground Six)

In ground six, Poizner argues the state trial judge improperly admitted evidence from his journals in which he described sexual conduct with individuals other than the victims.  (Pet. at 79-95; Traverse at 30-31.)  The evidence was admitted under California Evidence Code § 1108 as propensity evidence and under Evidence Code § 1101 as evidence of intent.[8]  Poizner contends the evidence should not have been admitted

---

[8] Evidence Code § 1101(b) provides:

> Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted unlawful sexual act did not reasonably and in good faith believe that the victim consented) other than his or her disposition to commit such an act.

Cal. Evid. Code § 1101 (West 2003).

Evidence Code § 1108(a) provides:

because it violated California's "corpus delicti" rule.  (Pet. at 87-95; Traverse at 30-31.)
Respondent argues first the claims are based only on state law, for which federal habeas
corpus relief is not available, and that, in any event there is no clearly established
Supreme Court law which states the admission of propensity evidence violates due
process.  (Mem. of P. & A. Supp. Answer at 39-42.)

Poizner raised this claim in the petition for review he filed in the California
Supreme Court on direct review.  (Lodgment No. 7.)  That court denied the petition
without citation of authority.  (Lodgment No. 8.)  Accordingly, this Court must "look
through" to the state appellate court's opinion denying the claim as the basis for its
analysis.  *Ylst*, 501 U.S. at 805-06.  That court wrote:

A. *Legal Principles*

"The purpose of the corpus delicti rule is to satisfy the policy of the
law that 'one will not be falsely convicted, by his or her untested words
alone, of a crime that never happened.' " (*People v. Miranda* (2008) 161
Cal.App.4th 98, 107; see also *People v. Alvarez, supra,* 27 Cal.4th at p.
1169.)  The rule requires the prosecution to "prove the corpus delicti, or the
body of the crime itself — i.e., the fact of injury, loss, or harm, and the
existence of a criminal agency as its cause.  In California, it has traditionally
been held, the prosecution cannot satisfy this burden by relying exclusively
upon the extrajudicial statements, confessions, or admissions of the
defendant." (*Alvarez*, at pp. 1168–1169.)  However, " '[t]he amount of
independent proof of a crime required for this purpose is quite small [and
has been] described . . . as "slight" [citation] or "minimal." ' " (*People v.
Herrera* (2006) 136 Cal.App.4th 1191, 1200, quoting *People v. Jones*
(1998) 17 Cal.4th 279, 301.)  Such proof may be circumstantial and need
not be beyond a reasonable doubt; it is sufficient if it permits an inference
of criminal conduct, even if a noncriminal explanation is also plausible.
(*Alvarez*, 27 Cal.4th at p. 1171.)  "[O]nce the necessarily quantum of
independent evidence is present, the defendant's extrajudicial statements
may then be considered for their full value to strengthen the case on all
issues." (*Ibid.*)

"In a criminal action in which the defendant is accused of a sexual offense, evidence of the
defendant's commission of another sexual offense or offenses is not made inadmissible by
Section 1101, if the evidence is not inadmissible pursuant to Section 352.  Cal. Evid. Code
§ 1108 (West 2003).

B. *Analysis*

As Poizner acknowledges, the California Supreme Court has not squarely decided whether the corpus delicti rule applies to evidence admissible under sections 1101, subdivision (b) or 1108.  (See *People v. Clark* (1992) 3 Cal.4th 41, 124 [addressing evidence admitted under section 1101, subdivision (b): "It is not clear that the corpus delicti rule applies to other crimes evidence offered solely to prove facts such as motive, opportunity, intent, or identity, or for impeachment"; declining to decide the issue because the corpus was independently established]; see also *People v. Horning*, *supra*, 34 Cal.4th at p. 899 [noting *Clark*'s statement of uncertainty].)  In *People v. Martinez* (1996) 51 Cal.App.4th 537, this court acknowledged the high court had left the question unresolved, and considered whether the corpus delicti rule applied to uncharged bad acts introduced for impeachment purposes in the guilt phase of trial.  Agreeing with the observations and analysis of the appellate court in *People v. Denis* (1990) 224 Cal.App.3d 563, we observed in *Martinez* that the defendant had relied only on dicta as the corpus delicti rule had never been applied to evidence of other prior crimes.  (*Martinez*, 51 Cal.App.4th at pp. 544–545.)  Further, we concluded it was reasonable that the corpus delicti rule did not apply when a prior uncharged offense was introduced only for impeachment: "There is no requirement that the proponent of a prior inconsistent statement prove the truth of the prior statement since it is inconsistency itself which makes the prior statement relevant and admissible evidence."  (*Id.* at p. 546.)

Poizner maintains that regardless of whether the corpus delicti rule applies to evidence offered for impeachment or under section 1101, it should apply to propensity evidence admitted under section 1108, because such evidence has historically been excluded as inherently prejudicial and provides a stronger basis for applying the rule than other evidence for impeachment or intent and motive.  He asks us to find these circumstances akin to the introduction of unadjudicated crimes admitted in aggravation at the penalty phase of a capital trial, where the corpus delicti rule applies. (See *People v. Valencia* (2008) 43 Cal.4th 268, 296.)

We conclude the trial court did not err with respect to its admission of the James and Homeboy writings.  Following *Clark*, the high court decided *People v. Alvarez*, where it addressed whether the corpus delicti rule was abrogated by the "Right to Truth–in–Evidence" amendment to the California Constitution providing that "relevant evidence shall not be

14cv1614 LAB (RBB)

excluded in any criminal proceeding." (Cal. Const., art. I, § 28, subd. (d).) (*Alvarez*, *supra*, 27 Cal.4th at p. 1165.)   The Court concluded the constitutional provision changed the aspect of the corpus delicti rule regarding the admission of extrajudicial statements:   "[I]nsofar as the corpus delicti rule restricts the admissibility of incriminatory extrajudicial statements by the accused, [article I,] section 28 [, subdivision] (d) abrogates it." (*Alvarez*, at p. 1174; see *People v. Valencia*, *supra*, 43 Cal.4th at p. 297.) The rule's independent proof requirement to support a conviction, however, remained undisturbed: section 28, subdivision (d) "did not abrogate the corpus delicti rule insofar as it provides that every conviction must be supported by some proof of the corpus delicti aside from or in addition to such statements, and that the jury must be so instructed." (*Alvarez*, 27 Cal.4th at p. 1165.)

Thus, "[a]s a result of the first determination in *Alvarez*, 'there no longer exists a trial objection to the admission in evidence of the defendant's out-of-court statements on grounds that independent proof of the corpus delicti is lacking.   If otherwise admissible, the defendant's extrajudicial utterances may be introduced in his or her trial without regard to whether the prosecution has already provided, or promises to provide, independent prima facie proof that a criminal act was committed.' [Citation.]   However, as a result of the second determination, the jury must be instructed 'that no person may be convicted absent evidence of the crime independent of his or her out-of-court statements'; also, the defendant may, on appeal, 'attack the sufficiency of the prosecution's independent showing.' " (*People v. Powers–Monachello* (2010) 189 Cal.App.4th 400, 407–408.)

Here, Poizner's writings, which reflected either nonconsensual sexual touching of James A. or sexual activity with a 17–year–old, were otherwise admissible under section 1108 as circumstantially relevant to the issue of his disposition or propensity to commit sex offenses. (*People v. Reliford* (2003) 29 Cal.4th 1007, 1012.)   Accordingly, the corpus delicti rule no longer prevented admission of the writings into evidence. (See *People v. Valencia*, *supra*, 43 Cal.4th at p. 297.) Under *People v. Alvarez*, *supra*, 27 Cal.4th 1161, notwithstanding Proposition 8, the court must "instruct the jury that [the defendant's extrajudicial] statements cannot be the sole proof the crime occurred." (*Id*. at p. 1181.)   The trial court so instructed the jury in this case.   Not only was the jury correctly instructed with a proper corpus delicti instruction, but the court also appropriately instructed the jury that the uncharged offenses were not sufficient by themselves to prove beyond

a reasonable doubt that Poizner committed the charged offenses. (*Reliford*, 29 Cal.4th at p. 1013.)

We otherwise decline to apply the corpus delicti rule in the context of prior uncharged offenses offered under section 1108 for purposes of inferring propensity. A trial court must instruct, sua sponte, on corpus delicti where a defendant's extrajudicial admission of guilt would otherwise qualify as substantial evidence to support a conviction. (See *People v. Najera* (2008) 43 Cal.4th 1132, 1137.) The circumstances presented here do not implicate the purpose of the rule, which is to require sufficient independent corroboration of the defendant's confessions to crimes for which he is on trial. "As one court explained, 'Today's judicial retention of the [corpus delicti] rule reflects the continued fear that confessions may be the result of either improper police activity or the mental instability of the accused, and the recognition that juries are likely to accept confessions uncritically.' [Citation.] [¶] Viewed with this in mind, the low threshold that must be met before a defendant's own statements can be admitted against him makes sense; so long as there is some indication that the charged crime actually happened, we are satisfied that the accused is not admitting to a crime that never occurred." (*People v. Jennings* (1991) 53 Cal.3d 334, 368.) Poizner was not charged with crimes against James A. and Homeboy, there was no danger he would be convicted of such crimes, and those uncharged offenses could not serve as substantial evidence to support Poizner's convictions. We hold the trial court was not required to instruct the jury that the prosecution was required to present independent proof of the acts described in Poizner's writings, which were admitted for the limited purpose of permitting the jury to infer Poizner's propensity to commit sex offenses.

Finally, even if error occurred, it would not warrant reversal of the judgment. We assess prejudice relating to the corpus delicti rule under the state law standard of *People v. Watson* (1956) 46 Cal.2d 818. (See *People v. Fuiava* (2012) 53 Cal.4th 622, 719, fn. 36 [assessing claim of corpus delicti error in penalty phase under state law standard].) "Error in omitting a corpus delicti instruction is considered harmless, and thus no basis for reversal, if there appears no reasonable probability the jury would have reached a result more favorable to the defendant had the instruction been given." (*People v. Alvarez, supra*, 27 Cal.4th at p. 1181.) Here, each victim testified in detail about the acts committed against him by Poizner, and the prosecution bolstered Austin's testimony with the pretext call with Poizner's incriminating statements. Further, despite hearing the evidence

of Poizner's writings, the jury convicted him of lesser included offenses on two of the section 288 charges as to Brandon P.  Thus, the verdicts themselves reveal that the evidence did not have an overly prejudicial impact. In sum, Poizner cannot show prejudice, even assuming error in the jury instructions.

(Lodgment No. 6 at 14-19.)

Poizner's claim regarding the corpus delicti error rests solely on state law.[9]  He contends "the trial court erred by admitting Poizner's handwritten notes because the prosecution failed to prove requisite corpus delicti of the uncharged sexual offenses," citing only California law, then states this error deprived Poizner of his federal due process rights.  (Pet. at 79-80.)  But, as previously noted, simply claiming that a state court's improper application of state law violated a petitioner's due process rights does not transform the claim into a federal one.  *Langford*, 110 F.3d at 1389.   Moreover, the state trial judge's ruling was correct under state law.  As the appellate court noted, "the California Supreme Court has not squarely decided whether the corpus delicti rule applies to evidence admissible under sections 1101, subdivision (b) or 1108," and that with respect specifically 1108 evidence, the California Supreme Court in *People v. Alvarez*, 27 Cal. 4th 1161 (2002) concluded that extrajudicial statements are admissible even if there is no independent proof of the corpus delicti so long as the jury is instructed, as they were in Poizner's case, that a conviction cannot be based on extrajudicial statements alone.  *Id*. at 1180-81.

In any event, as Respondent notes, there is no clearly established Supreme Court law which holds that character or "propensity" evidence is inadmissible or violates due process.  Indeed, the Supreme Court expressly reserved deciding that issue in *Estelle*, 502

/ / /

---

[9] Poizner cites *Opper v. United States*, 348 U.S. 84, 93-94 (1954) and *United States v. Hilger*, 728 F.3d 947, 949 (9th Cir. 2013) as support for his claim.  (Traverse at 32-22.)  But *Opper* addressed the corpus delicti requirement in the context of federal criminal prosecutions, not federal habeas corpus proceedings, and for charged offenses, not uncharged ones.  *Hilger* simply finds *Opper* is not applicable to supervised release proceedings.  Thus, they are inapposite.

U.S. at 75 n.5. *See Mejia v. Garcia*, 534 F.3d 1036, 1046 (9th Cir. 2008); *Alberni*, 458 F.3d at 864. As the Ninth Circuit has noted:

> The Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process. Although the Court has been clear that a writ should be issued when constitutional errors have rendered the trial fundamentally unfair, [citation omitted], it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ. Absent such "clearly established Federal law," we cannot conclude that the state court's ruling was an "unreasonable application."

*Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) (citing *Williams* 529 U.S. at 375 and *Musladin*, 549 U.S. at 77).

Moreover, Ninth Circuit precedent "squarely forecloses" the claim that admission of propensity evidence violates due process. *Mejia*, 534 F.3d at 1046; *see also, e.g.*, *Greel v. Martel*, No. 10-16847, 2012 WL 907215, 472 Fed. Appx. 503, 504 (9th Cir. 2012) (stating that "Ninth Circuit precedent 'squarely forecloses [the] argument' that admission of evidence of sexual misconduct to show propensity violates due process") (quoting *Mejia*, 534 F.3d at 1046). Thus, because there is no clearly established Supreme Court law applying the corpus delicti rule to uncharged offenses or holding the admission of propensity evidence violates due process, the state court's rejection of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. *Musladin*, 549 U.S. at 77. In addition, as discussed above, the state court's denial of this claim was not based on an unreasonable determination of the facts. The claim is therefore **DENIED**.

I. Corpus Delicti Instruction (Ground Seven)

In ground seven, Poizner claims the trial court erred by failing to instruct the jury "not to consider Poizner's extrajudicial statements when deciding if a corpus of the uncharged crimes existed." (Pet. at 96-97; Traverse at 32-33.) Respondent contends the claim is solely one of the application of state law and that the state court's denial of the

/ / /

48

1   claim was neither contrary to, nor an unreasonable application of, clearly established

2   Supreme Court law.  (Mem. of P. & A. Supp. Answer at 39-42.)

3         Poizner raised this claim in the petition for review he filed in the California

4   Supreme Court on direct appeal.  (Lodgment No. 7.)  The state supreme court denied the

5   petition without citation of authority.  (Lodgment No. 8.)  Accordingly, this Court must

6   "look through" to the state appellate court's decision denying the claim as the basis for its

7   analysis.  *Ylst*, 501 U.S. at 805-06.   That court stated as follows:

8               We otherwise decline to apply the corpus delicti rule in the context of
9         prior uncharged offenses offered under section 1108 for purposes of
          inferring propensity.  A trial court must instruct, sua sponte, on corpus
10        delicti where a defendant's extrajudicial admission of guilt would
          otherwise qualify as substantial evidence to support a conviction.  (See
11        *People v. Najera* (2008) 43 Cal.4th 1132, 1137.)   The circumstances
          presented here do not implicate the purpose of the rule, which is to require
12        sufficient independent corroboration of the defendant's *confessions to*
          *crimes for which he is on trial.*  "As one court explained, 'Today's judicial
13        retention of the [corpus delicti] rule reflects the continued fear that
          confessions may be the result of either improper police activity or the
14        mental instability of the accused, and the recognition that juries are likely
15        to accept confessions uncritically.'  [Citation.]  [¶]  Viewed with this in
          mind, the low threshold that must be met before a defendant's own
16        statements can be admitted against him makes sense; so long as there is
          some indication that the charged crime actually happened, we are satisfied
17        that the accused is not admitting to a crime that never occurred."  (*People*
18        *v. Jennings* (1991) 53 Cal.3d 334, 368.)  Poizner was not charged with
          crimes against Araway and Homeboy, there was no danger he would be
19        convicted of such crimes, and those uncharged offenses could not serve as
20        substantial evidence to support Poizner's convictions.  We hold the trial
          court was not required to instruct the jury that the prosecution was required
21        to present independent proof of the acts described in Poizner's writings,
22        which were admitted for the limited purpose of permitting the jury to infer
          Poizner's propensity to commit sex offenses.
23
24
25
26   (Lodgment No. 6 at 18.)

27         As the state court noted, and as discussed above in section IV(H) of this Order, the

28   California Supreme Court has left open the question whether the corpus delicti rule

applies to uncharged conduct.  *See People v. Horning*, 34 Cal. 4th 871, 899 (2004); *People v. Davis*, 168 Cal. App. 4th 617, 638.  Appellate courts in California have rejected the idea.  *See, e.g., Davis*, 168 Cal. App. 4th at 636-38; *People v. Denis*, 224 Cal. App. 3d 563, 568-570.  Without any authority, either state or federal, mandating the instruction should have been given, Poizner has not established error.

Moreover, instructional error can form the basis for federal habeas corpus relief only if it is shown that "'the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.' [citation omitted]."  *Murtishaw*, 255 F.3d at 971; *Henderson*, 431 U.S. at 154.  The allegedly erroneous jury instruction cannot be judged in isolation.  *Estelle*, 502 U.S. at 72.  Rather, it must be considered in the context of the entire trial record and the instructions as a whole.  *Id.*  Here, any error in instructing the jury with the corpus delicti instruction with regard to the uncharged conduct did not "so infect the entire trial that the resulting conviction violates due process."  *Murtishaw*, 255 F.3d at 971.  There was ample evidence of Poizner's guilt in the form of testimony by his victims.  Accordingly, the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.  Nor was it based on an unreasonable determination of the facts.  The claim is **DENIED.**

J.  <u>Erroneous Admission of Evidence of Spanking (Ground Eight)</u>

In ground eight, Poizner argues the trial court's admission of evidence from his diary, in which he described engaging in sexual activities and spanking with "Homeboy" when he was eighteen and "possibly smacking his ass a couple of times before, jokingly, before he was 18, I think once" violated his due process rights.  (Pet. at 98-99; Traverse at 34; Lodgment No. 2, vol. 4 at 478-79.)  The evidence was admitted as propensity evidence under Evidence Code § 1108.  (Lodgment No. 1, vol. 1 at 1076.)  Respondent contends the state court's resolution of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.  (Mem. of P. & A. Supp. Answer at 42-44.)

Poizner raised this claim in the petition for review he filed in the California Supreme Court on direct review.  (Lodgment No. 7.)  That court denied the petition without citation of authority.  (Lodgment No. 8.)  Accordingly, this Court must "look through" to the state appellate court's opinion denying this claim on direct appeal as the basis for its analysis.  *Ylst*, 501 U.S. at 805-06.  That court analyzed the claim as follows:

> Poizner contends the trial court denied him due process and a fair trial by admitting his writings describing the acts of spanking Homeboy, and then instructing the jury it could consider those acts as criminal sexual offenses so as to draw an inference of propensity to engage in sexual offenses.  Poizner maintains the act of spanking Homeboy on his 18th birthday is not a qualifying offense under section 1108, and the error resulted in substantial prejudice in that he was "both wrongly branded a criminal based on Homeboy spanking acts, and the jury was permitted to conclude if he committed that 'offense' he committed the charged offenses . . . ."

> The People concede the consensual spanking of Homeboy on his 18th birthday does not qualify as a sexual offense within the meaning of section 1108.  Stating the trial court's instruction was unclear as to which acts of spanking qualified under section 1108, they agree the trial court erred to the extent it instructed the jury that those acts could be considered as propensity evidence.  However, they point out the evidence of these acts was nevertheless admissible under section 1101 to prove intent, common plan or scheme, or any of the other permissible inferences under that statute, and maintain the instructional error was harmless because the evidence of Poizner's guilt – via the victims' testimony and Poizner's own admissions in his pretext call to Austin – was overwhelming.  The People argue that there is no reasonable probability Poizner would have achieved a more favorable result absent the error.

> We assess de novo whether jury instructions correctly state the law.  (*People v. Posey* (2004) 32 Cal.4th 193, 218.)  In reviewing a claim that the court's instruction were misleading, our inquiry is whether there is a reasonable likelihood the jury misunderstood and misapplied the instructions.  (*People v. Ramos* (2008) 163 Cal.App.4th 1082, 1088; *People v. Bragg* (2008) 161 Cal.App.4th 1385, 1396.)  In a noncapital case, instructional error is reviewed for prejudice under *People v. Watson*, *supra*, 46 Cal.2d 818.  (See *People v. Gamache* (2010) 48 Cal.4th 347, 376; *People v. Breverman* (1998) 19 Cal.4th 142, 178.)  Under that standard, the

conviction may be reversed only if " 'after an examination of the entire cause, including the evidence' (Cal. Const., art. VI, § 13), it appears reasonably probable' the defendant would have obtained a more favorable outcome had the error not occurred." (*Breverman*, at p. 178.)

We agree the instructional error, if any, is harmless.  Though the propensity instruction referred generally to Poizner's spanking of Homeboy as one of the uncharged sexual offenses without distinguishing Homeboy's age, directly afterwards the jury was separately instructed concerning Poizner's consensual sexual activity with Homeboy after his 18th birthday, and specifically told to exclude that evidence from its consideration of Poizner's propensity to commit sex offenses.  Thus, at most, the jury instructions were arguably contradictory and potentially misleading.  However, assessing the instructions as a whole as we must (*People v. Ramos*, *supra*, 163 Cal.App.4th at p. 1088).  We conclude they were reasonably clear that Poizner's consensual sexual activity with Homeboy after he turned 18 years old was not relevant to Poizner's disposition or inclination to commit the charged crimes, and the instructions appropriately apprised the jury that that particular consensual activity was relevant to other issues such as specific intent, plan or scheme, and witness credibility.

Further, review under *Watson*, " 'focuses not on what a reasonable jury *could* do, but what such a jury is *likely* to have done in the absence of the error under consideration.  In making that evaluation, an appellate court may consider, among other things, whether the evidence supporting the existing judgment is so *relatively* strong, and the evidence supporting a different outcome is so *comparatively* weak, that there is no reasonable probability the error of which the defendant complains affected the result . . . .' " (*People v. Moye* (2009) 47 Cal.4th 537, 556.)  Poizner does not challenge the sufficiency of the evidence of his convictions, and the jury plainly accepted the victims' testimony as to Poizner's conduct.  Additionally, as stated, Austin D's testimony was corroborated by the pretext call introduced into evidence.  Other boys corroborated some of the conduct between Poizner and Brandon.  Given the ample evidence supporting Poizner's convictions, and absent any indication the jury was confused or uncertain about Poizner's guilt, we conclude Poizner cannot demonstrate prejudice, even if he could establish error.

(Lodgment No. 6 at 19-22.)

As previously noted, to the extent Poizner is arguing the trial court improperly applied California law in its admission of evidence, he is not entitled to relief.  Federal

habeas relief is not available for alleged violations of state law.  *Estelle*, 502 U.S. at 67-68; *see also* 28 U.S.C. § 2254(a).

Moreover, as discussed above, there is no clearly established Supreme Court law which holds that character or "propensity" evidence is inadmissible or violates due process, s*ee Estelle*, 502 U.S. at 75 n.5; *Mejia*, 534 F.3d 1036, 1046 (9th Cir. 2008); *Alberni*, 458 F.3d at 864, and Ninth Circuit has precedent "squarely forecloses" the claim that admission of propensity evidence violates due process.  *Mejia*, 534 F.3d at 1046; *Greel*, 472 Fed. Appx. at 504.  Thus, because there is no clearly established Supreme Court law which holds the admission of propensity evidence violates due process, the state court's rejection of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.  *Musladin*, 549 U.S. at 77.

Even if the evidence was wrongly admitted and the jury improperly instructed, the state court's conclusion that any errors were harmless was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.  Erroneous admission of evidence and instructional error can form the basis for federal habeas corpus relief only if it is shown that "'the ailing instruction by itself [or the wrongly admitted evidence] so infected the entire trial that the resulting conviction violates due process.' [citation omitted]."  *Murtishaw*, 255 F.3d at 971; *Henderson*, 431 U.S. at 154.   Here, as the state court noted, although the jury was instructed they could consider the uncharged offenses involving Homeboy as propensity evidence, they were also explicitly instructed that they could not consider any evidence of consensual sexual activity between Poizner and Homeboy when Homeboy was an adult for that purpose.  (Lodgment No. 1, vol. 1 at 176-78.)  A jury is presumed to follow the instructions given to it by a trial court.  *Zafiro v. United States*, 506 U.S. 534, 540 (1993).  Further, the evidence supporting Poizner's conviction was overwhelming.  Accordingly,  the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.  Nor was it based on an unreasonable determination of the facts.  The claim is **DENIED**.

J.  <u>Admission of Charged Offenses as Propensity Evidence (Ground Nine)</u>

In claim nine, Poizner attacks the admission of the charged offenses as propensity evidence.  (Pet. at 100-01; Traverse at 35-36.)  Respondent counters that the state court's resolution of the claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.  (Mem. of P. & A. Supp. Answer at 44-46.) Specifically, Respondent notes Poizner's contention that the charged crimes were improperly used as propensity evidence was resolved against him by the California Supreme Court during the pendency of his appeal and that, in any event, as discussed previously, there is no clearly established Supreme Court law which prevents the use of propensity evidence.  (*Id.*)

Poizner raised this claim in the petition for review he filed in the California Supreme Court on direct review.  (Lodgment No. 7.)  That court denied the petition without citation of authority.  (Lodgment No. 8.)  Accordingly, this Court must "look through" to the state appellate court opinion denying the claim as the basis for its analysis.  *Ylst*, 501 U.S. at 805-06. That court wrote:

> Poizner contends the trial court prejudicially erred by instructing the jury that they could consider the charged crimes in deciding whether he had a propensity to commit other charged offense.  Urging us to follow *People v. Quintanilla* (2005) 132 Cal.App.4th 572 (*Quintanilla*), Poizner maintains section 1108 does not authorize the use of currently charged offenses to convict a defendant of other charged crimes, and to use such charged offenses in this manner "interferes with the trial court's right to exclude the propensity evidence under section 352, the linchpin which wave this statute from being violative of due process."  Poizner argues that as a result, the instruction reduced the People's burden of proof, denied him his right to a jury trial, and violated his right to due process.  He notes the issue at hand – whether jurors could consider charged offense as propensity evidence under section 1108 – was on review in the California Supreme Court.

> Following the completion of briefing in this matter, the high court in *People v. Villatoro* (2012) 54 Cal.4th 1152 resolved the question in the People's favor.  In *Villatoro*, the court observed that section 1108 by its terms did not distinguish between charged or uncharged sexual offense, but

refers to " '*another* sexual offense or offenses.' " (*Id.* at p. 1160.)  The court stated, "This definition of 'another' contains no limitation, temporal or otherwise, to suggest that section 1108 covers only offenses other than those for which the defendant is currently on trial." (*Id.* at p. 1161.)  Nor did the statute's qualifying language concerning section 352 mandate that the sexual offense be uncharged. (*Ibid.*)  Disapproving *Quintanilla* on that point, the court in *Villatoro* concluded that nothing in the language or legislative history restricted the application of section 1108 to uncharged offenses. (*Villatoro,* 54 Cal.4th at pp. 1163, fn. 5, 1164.)

The court in *Villatoro* proceeded to consider whether the trial court had erred by instructing the jury with a modified version of CALCRIM No. 1191 similar to the instruction given in the present case [footnote omitted], and the defendant's argument that the modified instruction failed to clearly designate the standard of proof that applied to the charged offenses. (*People v. Villatoro*, *supra,* 54 Cal.4th at p. 1167.)  The defendant in *Villatoro* contended that a juror could have used any standard of proof, or none, to convict him, depriving him of the presumption of innocence.  The court rejected these arguments, pointing out "the instruction clearly told the jury that all offenses must be proven beyond a reasonable doubt, even those used to draw an inference of propensity.  Thus, there was no risk the jury would apply an impermissibly low standard of proof." (*Id.* at p. 1168.)  It pointed out the trial court had also instructed the jury with CALCRIM No. 220, which "defines the reasonable doubt standard and reiterates that the defendant is presumed innocent; it also explains that only proof beyond a reasonable doubt will overcome that presumption." (*Ibid.*)  Thus, the modified instruction did not impermissibly lower the standard of proof or otherwise interfere with defendant's presumption of innocence. (*Ibid.*)

Finally, the court rejected the defendant's argument that the trial court in that case had not undertaken a section 352 analysis before giving the modified instruction. (*People v. Villatoro*, *supra,* 54 Cal.4th at p. 1168.)  It held the record reflected the trial court implicitly conducted such an analysis as it properly could, but that any error in its failure to do so was harmless in view of the striking similarity of the various prior offenses and their high probative value, which substantially outweighed any prejudice. (*Id.* at pp. 1168-1169.)

*Villatoro* disposes of Poizner's arguments as to the instructions impact on the People's burden of proof, on which his due process and jury trial claims are based.  Moreover, it is plain from the record here that the trial

court, as in *Villatoro*, implicitly if not expressly made a section 352 analysis of the prior offenses before permitting them to be used as evidence under section 1108.  In reviewing this particular jury instruction, the court stated in part:  "The discussion was that 1108 only applies to other uncharged crimes and [*People v. Wilson* (2008) 166 Cal.App.4th 1034] talks about the fact that is applies as well to other charged crimes.  The jury can appropriately use those as propensity evidence under 1108 when they're evaluating each of those crimes essentially if the crimes are cross-admissible, if they're relevant, if they're admissible under 1108, *and I believe that I've already made that determination when we first argued the case for consolidation*, . . . each [of the crimes] were similar enough regarding the age of the boys, the circumstances of the molests, the type of touching, that they would be cross-admissible." (Italics added.)  The record reflects an adequate section 352 weighing process, not mere reliance on *People v. Wilson*, *supra*, 166 Cal.App.4th 1034, to admit the charged crimes as evidence.

(Lodgment No. 6 at 22-25.)

As noted above, to the extent Poizner is attacking the state court's interpretation and application of its own rules of evidence, he is not entitled to relief.  *Estelle*, 502 U.S. 67-68.  In any event, it appears the trial court did not err by admitting charged offenses as propensity evidence and so instructing the jury.  *See Villatoro*, 54 Cal. 4th at 1160-68.  Moreover, as previously discussed,  there is no clearly established Supreme Court law which holds that character or "propensity" evidence is inadmissible or violates due process.  Indeed, the Supreme Court expressly reserved deciding that issue in *Estelle*, 502 U.S. at 75 n.5. *See Mejia*, 534 F.3d at 1046; *Alberni,* 458 F.3d at 864; *see also, e.g., Greel*, 472 Fed. Appx. at 504.  Thus, because there is no clearly established Supreme Court law which holds the admission of propensity evidence violates due process, the state court's rejection of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.  *Musladin*, 549 U.S. at 77.  Accordingly, the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.  Nor was it based on an unreasonable determination of the facts.  The claim is therefore **DENIED**.

/ / /

K. Admission of Evidence of Poizner's Sexual Orientation, Consensual Homosexual Acts and Possession of Homosexual Pornography (Grounds Ten and Eleven)

Poizner next contends the trial court improperly admitted evidence of his homosexuality, consensual homosexual sexual activity, and possession of homosexual pornography, thereby violating his due process rights. (Pet. at 102-10; Traverse at 37-38.) Specifically, Poizner argues his sexual orientation and consensual homosexual activity was irrelevant and prejudiced the jury, the pornographic DVD depicting homosexual sexual activity between adults was irrelevant because there was no connection between the sexual activity, the pornographic DVD and the crimes alleged, and the trial court should have excluded the evidence under Evidence Code § 352. (Pet. at 102-13; Traverse at 37-38.) Respondent contends the state court's resolution of these claims was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law, and, to the extent Poizner challenges the application of state law, he is not entitled to relief. (Mem. of P. & A. Supp. Answer at 46-49.)

Poizner raised this claim in the petition for review he filed on direct appeal in the California Supreme Court. (Lodgment No. 7.) That court denied the petition without citation of authority. (Lodgment No. 8.) Accordingly, this Court must "look through" to the state appellate court's opinion as the basis for its analysis. *Ylst*, 501 U.S. at 805-06. That court thoroughly analyzed the claim as follows:

> Poizner contends the trial court violated his right to due process and a fair trial by admitting evidence that he had told Brandon's mother he was gay, as well as evidence he possessed a pornographic DVD cover depicting graphic, sexually explicit acts (oral copulation) between youthful-looking adult men and containing a brief but prurient description on the back of the cover. [FN 5: Counsel read the summary to the court, reminding it the DVD cover was going to be back with the jury during deliberations: "I'm just reading the back of this. This is going back to the jury – an incredible 18-year-old's sexual twinkfest.' It says, 'Kenny Rose and David Fire are also lean hairless lads who are horny and insatiable. The uninhibited sex from these big dick teens has to be seen to be believed. Great cock-sucking, rimming and fucking produce volumes, load, of thick teen spunk and explode everywhere.'" The text appears on the upper left hand corner of

the back of the DVD cover in 18-character-per-inch type.]   He argues neither his sexual orientation nor the DVD jacket were logically relevant to the crimes of lewd conduct with children, and they were not relevant under section 1101 to prove intent, common plan or scheme, or to evaluate witness credibility.  Poizner maintains that to the extent the evidence had some degree of relevance, the court abused its discretion by failing to exclude it as unduly prejudicial under section 352.  According to Poizner, these errors, combined with the court's instruction to the jury that it could consider this evidence to determine his intent, plan or scheme to commit the offenses or evaluate witness credibility, requires reversal.

. . . .

## B. *Evidence of Poizner's Sexual Orientation*

Before trial, Poizner moved in limine to exclude evidence of his sexual orientation, specifically evidence that he had told the boys or a parent he was gay or bisexual.  The prosecutor argued the evidence was relevant to Poizner's intent, sexual interest and motivation to be around boys, and also because he had used that fact about himself to gain the parents' trust.  Though the trial court observed there was potential prejudice, it found there was substantial relevance to the evidence that Poizner had a sexual interest in people of the same sex, and was also part of Poizner's grooming behavior.  In part, it reasoned, "I totally agree with the label of being homosexual is potentially prejudicial.  And as I said, in the vast majority of cases, I think, would have absolutely no relevance.  I also think that there is a potential for jurors to equate homosexuality with pedophilia and that's – I mean I would be happy to allow you to put on an expert to say that that's absolutely not true.  But I also see the potential prejudice.  There is no question.  I also see a very substantial relevance.  I mean, talk to anybody on the street and you ask them if they think it's relevant, and if a man is accused of molesting boys, whether or not he's homosexual or heterosexual, they will tell you, yes, it's relevant."

Accordingly, at trial, Austin testified that on one occasion after Poizner took him home, Poizner sat down and introduced himself to Austin's mother, telling her, " 'I don't want you to hear from anybody else, but I'm gay, but I'm into stable, steady relationships.  And I'm not into, like, the teenagers or the boys, or anything.' "

///

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

There is no question that evidence of a defendant's sexual preference can be highly prejudicial if it is irrelevant to the charged crime. (*U.S. v. Yazzie* (9th Cir. 1995) 59 F.3d 807, 813; see *U.S. v. Gillespie* (9th Cir. 1988) 852 F.2d 475, 478-479 [holding evidence of homosexuality is extremely prejudicial and trial court erred in admitting evidence of defendant's homosexual relationship as it neither proved nor disproved that the appellant committed child molestation; reversing conviction for transportation of a person in interstate commerce for illegal sexual purposes]; *Cohn v. Papke* (9th Cir. 1981) 655 F.2d 191, 194 [possibility of prejudicial effect of evidence of homosexuality is great since jury may be influenced by biases and stereotypes; evidence of prior homosexual experiences of plaintiff in civil rights case against police had minimal probative value regarding whether he solicited an act of prostitution]; *U.S. v. Birrell* (9th Cir. 1970) 421 F.2d 665, 666 [reversing a conviction for interstate transportation of a stolen motor vehicle due to the prosecutor's statements urging the jury to convict the defendant and not "turn him loose on society" because he was homosexual]; *State v. Bates* (1993) 507 N.W. 2d 847, 850, 852 [evidence of defendant's sexual orientation was improper character evidence; whether the defendant was sexually attracted to adult men was irrelevant to whether he was sexually interested in his 8 and 12-year-old victims].) The Ohio Supreme Court has said: "[T]he modern understanding of pedophilia is that it exits wholly independently from homosexuality. The existence or absence of one neither establishes nor disproves the other. 'The belief that homosexuals are attracted to prepubescent children is a baseless stereotype.' . . . Thus, evidence of homosexuality is not relevant to establish pedophilia." (*State v. Crotts* (Ohio 2004) 820 N.E.2d 302, 306.) However, exclusion is required only where the evidence's unfair prejudice *substantially outweighs* its probative value. (§ 352; *U.S. v. Yazzie*, 59 F.3d at pp. 811-812.)

We perceive no manifest abuse of discretion in the trial court's admission of this evidence. In this case, Poizner's homosexuality was not collateral to the issues. Poizner's remark to Austin's mother about his sexual preference and assurance he was not attracted to teenagers or boys was part of Austin's trial testimony, and it tended to show Poizner's plan or scheme to reassure parents and gain access to the boys while concealing his true intentions. This is a permissible use of such evidence, no matter how the evidence may reflect on the defendant. (§ 1101, subd. (b); *People v. Mullen* (1953) 115 Cal.App.2d 340, 342-343 [evidence of homosexual tendencies of the male defendant was relevant to charge of assault, where prosecution's theory at trial was that the male victim of the assault was

59

interfering with the defendant's relationship with another man]; *People v. Helwinkel* (1962) 199 Cal.App.2d 207, 214 [citing *Mullen* for the proposition that evidence of homosexual tendencies of the defendant was relevant to show motive].)

We need not analyze further whether the court's section 352 ruling on this point was an abuse of discretion, because even assuming error, under the circumstances, the introduction of this evidence was harmless. The prosecutor did not use the evidence of Poizner's homosexuality in a repeated or inflammatory way. At one point in closing arguments, she referred briefly to Poizner's homosexuality in telling the jurors – appropriately – they could consider that and other circumstances to decide whether Poizner's touchings were sexually motivated. [FN 6: omitted]. At another point she recounted the testimony of Poizner's female roommate, who said Poizner had heterosexual pornography and she thought it "a little odd because he's gay." At no point did the prosecutor make remarks suggesting that Poizner's sexual preference disposed him to a sexual desire for adolescent boys. Indeed, as we have set out above, the trial court gave a curative instruction to the jury that it was not to consider Poizner's sexual preference on the question of his disposition or inclination to commit the charged offenses. We presume the jurors followed that instruction absent any contrary indication. (*People v. Gray* (2005) 37 Cal.4th 168, 217.) And the trial evidence concerning Poizner's sexual preference was not more inflammatory than the evidence from the victims of the lewd touchings.

Further, as we have already observed, the evidence against Poizner is abundant and strong. He has not challenged the sufficiency of the evidence of his convictions, and the victims testified directly, specifically and unequivocally about the offenses. None of their testimony was physically impossible of inherently lacking in credibility, and Austin's was corroborated by Poizner's own incriminating admissions. The victims' testimony, believed by the jury, was sufficient to exclude any chance that the admission of the evidence contributed to Poizner's convictions. Accordingly, under the state law *Watson* standard of error in admitting evidence we cannot say it is reasonably probable the verdict would have been more favorable to Poizner absent any assumed error. (*People v. Partida* (2005) 37 Cal.4th 428, 439.) Nor can we say federal due process was offended. Given the limited use of the evidence and brief trial reference to it, admission of the evidence did not render the trial fundamentally unfair. (*Ibid.*)

## C. *The DVD Cover*

As for its decision to admit the DVD cover found in Poizner's possession, the trial court reasoned in part:  "I do recognize that there is some prejudice to seeing the pictures.  They're not particularly pleasant pictures.  [¶] But there's no question that the defense in this case has been to challenge the credibility of each of these boys, that they're making this up for all sorts of various reasons, to even challenge the credibility of Mr. Araway, and that if the defendant's a homosexual, he's a homosexual interested in adults, not children, and this video, his possession of it, appears to support an inference that he does have a sexual interest in young-looking men.  They may be adult men, but they look like teenage boys.  [¶] How they look – I don't particularly like the idea of the jury's seeing the sex acts, but looking at the age of the boys in this video or on the cover of the video is unfortunately very probative."

Poizner acknowledges that in *People v. Page*, *supra*, 44 Cal.4th 1, the California Supreme Court reaffirmed the potential relevance of evidence of a defendant's possession of sexual images on the issue of intent.   It explained:  "In *People v. Memro* (1995) 11 Cal.4th 786 . . . (*Memro*) [abrogated on other grounds in *People v. McKinnon* (2011) 52 Cal.4th 610, 639, fn. 18], the defendant was charged with first degree felony murder based upon a violation of [Penal Code] section 288, which prohibits the commission of a lewd a lascivious act upon a child who is under the age of 14 years.  The defendant in *Memro* enjoyed taking photographs of young boys in the nude, and he had escorted his victim, seven years of age, to the defendant's apartment with the intent of taking photographs of the victim in the nude.  When the victim said he wanted to leave, the defendant strangled him and attempted to sodomize his dead body.  The trial court admitted magazines and photographs possessed by the defendant containing sexually explicit stories, photographs and drawings of males ranging in age from prepubescent to young adult.  We concluded the trial court did not abuse its discretion, because 'the photographs, presented in the context of defendant's possession of them, yielded evidence from which the jury could infer that he had a sexual attraction to young boys and intended to act on that attraction.  [Citation.]  The photographs of young boys were admissible as probative of defendant's intent to do a lewd or lascivious act with [the victim].' " (*People v. Page*, 44 Cal.4th at p. 40.)

Poizner apparently seeks to distinguish *Page* and *Memro*, arguing the DVD here is "wholly and utterly irrelevant" under any theory because there

is no connection between the DVD jacket reflecting actions between adults and the charged crimes, and because none of the victims were shown the DVD. We disagree. The question is whether the images of young males orally copulating each other permitted the jury to draw an inference of Poizner's sexual interest in young boys or engage in touchings with lewd intent in violation of Penal Code section 288. Though the DVD jacket may actually have depicted adult males on the cover, their appearance is easily that of adolescent boys, and thus it is probative on the question of Poizner's sexual motivation in his contact with the young victims. Importantly, "[t]he least degree of similarity (between the uncharged act and charged offense) is required" to prove the defendant's mental state, such as his intent. (*People v. Ewoldt* (1994) 7 Cal.4th 380, 402.)

And while the DVD cover is prurient, graphic and portrays sexually explicit conduct beyond what occurred in the present case, we cannot say it is unduly prejudicial. Prejudicial evidence, as referred to in section 352, is that which " ' "tends to evoke an emotional bias against defendant as an individual and which has very little effect on the issues. In applying section 352, 'prejudicial' is not synonymous with 'damaging' " ' " (*People v. Miramontes* (2010) 189 Cal.App.4th 1085, 1098, quoting *People v. Bolin* (1998) 18 Cal.4th 297, 320.) It is "not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence." (*People v. Karis* (1988) 46 Cal.3d 612, 638.) In *Memro*, the defendant argued that sexually graphic magazines and pictures of young boys was barred by section 352. (*People v. Memro*, *supra*, 11 Cal.4th at p. 864.) But the court found no abuse of discretion, stating, "To be sure, some of this material showed young boys in sexually graphic poses [and] [i]t would undoubtedly be disturbing to most people. But we cannot say that it was substantially more prejudicial than probative, for its value in establishing defendant's intent to violate [Penal Code] section 288 was substantial." (*Ibid.*) Here, Poizner's conduct at times went beyond mere hugs and massages, he rubbed Austin's genitals and offered to orally copulate him twice, which is the sort of activity reflected on the DVD cover.

Thus, though the DVD cover was capable of engendering antipathy towards Poizner, this did not substantially outweigh its probative value, both as to Poizner's lewd intent and to the victims' credibility, which was the central theme of Poizner's defense. [FN 7 omitted.] Poizner sought to characterize his conduct as innocent, and thus evidence tending to show his touchings were done with the requisite lewd intent, even though the acts themselves may not have been lewd, was highly relevant. (See *People v.*

1
2
3
4
5

> *Martinez* (1995) 11 Cal.4th 434, 444 [Penal Code section 288 "prohibits *all* forms of sexually motivated contact with an underage child.  Indeed, the 'gist' of the offense has always been the defendant's intent to sexually exploit a child, not the nature of the offending act"].)  In sum, the trial court did not manifestly abuse its discretion in finding probative value to the DVD cover, and concluding its probative value was not outweighed by its prejudicial impact.

6   (Lodgment No. 6 at 25-36.)

7   As with Poizner's other claims involving the erroneous admission of evidence, to
8   the extent he claims the trial judge improperly applied state evidentiary law and thus the
9   evidence should not have been admitted, he is not entitled to relief.  *Estelle*, 502 U.S. at
10  67-68; *see also* 28 U.S.C. § 2254(a).  Simply claiming that a state court's improper
11  application of state law violated a petitioner's due process rights does not transform the
12  claim into a federal one.  *Langford*, 110 F.3d at 1389.

13  In addition, as previously noted, "[a]lthough the [Supreme] Court has been clear
14  that a writ should be issued when constitutional errors have rendered the trial
15  fundamentally unfair (citation omitted), it has not yet made a clear ruling that admission
16  of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient
17  to warrant issuance of the writ," and thus "under AEDPA, even clearly erroneous
18  admissions of evidence that render a trial fundamentally unfair may not permit the grant
19  of federal habeas corpus relief if not forbidden by 'clearly established Federal law,' as
20  laid out by the Supreme Court."  *Holley*, 568 F.3d at 1101; *see also Greel*, 472 Fed.
21  Appx. at 504.

22  In any event, the admission of evidence of Poizner's sexual orientation, consensual
23  homosexual acts and possession of homosexual pornography, and the jury instructions
24  associated with that evidence, did not render his trial fundamentally unfair.  *Estelle*, 502
25  U.S. at 67.  Poizner admitted he was bisexual in the pretext phone call Austin made to
26  him.  (Lodgment No. 1, vol. 1 at 0137.)  The prosecution did not focus on Poizner's
27  sexuality in questioning witnesses or in closing argument, and did not argue that
28  Poizner's sexuality made him guilty of the crimes.  (Lodgment No. 2, vol. 7 at 1063-

1110, 1139-51.)  The evidence of Poizner's consensual homosexual acts with "Homeboy" was brief and, in the context of the trial as a whole where multiple victims testified about Poizner's sexual crimes, did not render the trial fundamentally unfair.  The DVD cover, while graphic, was no more disturbing than the live testimony from the multiple young victims who testified about Poizner's actions.  Further, the jury was instructed they could not consider evidence of Poizner's sexuality, consensual homosexual acts, and possession of homosexual pornography as evidence he was "disposed or inclined" to commit the offenses and only for the limited purpose of determining Poizner's intent and whether he had a plan or scheme to commit the charged offenses.  Poizner's homosexuality and interest in homosexual pornography that depicted young men who looked like teenaged boys engaging in sex was relevant to that inquiry.

In sum, there is no clearly established Supreme Court law which forbids the admission of prejudicial evidence, and the evidence Poizner complains of did not render his trial fundamentally unfair.  Accordingly, the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.  *Williams*, 529 U.S. at 412-13.  Nor was it based on an unreasonable determination of the facts.  Poizner is not entitled to relief as to this claim, and it is therefore **DENIED**.

### L.  Ineffective Assistance of Counsel (Subclaims of Grounds One and Three)

Poizner contends trial counsel was ineffective when he failed to obtain Brandon's psychiatric records and failed to present character witnesses.  (Pet. at 46-47, 62-63, 94-95; Traverse at 11-18, 22-25.)  Respondent argues the state court's denial of these claims were neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.  (Mem. of P. & A. Supp. Answer at 25-26.)

Poizner raised his ineffective assistance of counsel claims in the petition for review he filed in the California Supreme Court challenging the appellate court's denial of his petition for writ of habeas corpus.  (Lodgment No. 12.)  The California Supreme Court rejected this claim without citation of authority.  (Lodgment No. 13.)  Accordingly, this Court must "look through" to the state appellate court's opinion denying the claim as the

basis for its analysis.  *Ylst*, 501 U.S. at 805-06.  That court analyzed the claims as follows:

> Also without merit is Poizner's related claim that his trial counsel "rendered ineffective assistance by inexplicably failing to get Brandon's and/or Austin's critical psychiatric records."  Poizner has made no showing that trial counsel knew or should have known of the records but took no steps to obtain them, that the records contained relevant evidence, and that there was a reasonable probability of a more favorable outcome had the records been introduced at trial.  (*Strickland v. Washington* (1984) 466 U.S. 668, 694 (*Strickland*); *In re Clark*, *supra*, at p. 766.)
>
> . . . .
>
> Poizner's related complaint[ ] that trial counsel provided ineffective assistance by failing to call character witnesses . . . [has] no merit.  Trial counsel stated in a declaration:  "Most damaging to the defense case would be the court allowing the prosecutor to inquire from character witness[es] whether or not uncharged acts referred to in the journal would impact their testimony.  [¶]  Based upon the trial court's rulings and indications regarding the scope of cross[-]examination of character witnesses, I decided that it was not in [Poizner's] interest to present character evidence."  The decision not to call character witnesses for "fear that otherwise inadmissible bad character evidence could be used by the prosecution in rebuttal . . . was certainly a reasonable one and was well within the range of reasonable competence."  (*People v. Miranda* (1987) 44 Cal.3d 57, 121.)

(Lodgment No. 11 at 2-3.)

To establish ineffective assistance of counsel, a petitioner must first show his attorney's representation fell below an objective standard of reasonableness.  *Strickland v. Washington*, 466 U.S. 668, 688 (1984).  "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.* at 687.  He must also show he was prejudiced by counsel's errors.  *Id.* at 694.  Prejudice can be demonstrated by a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*; *see also Fretwell v. Lockhart*,

506 U.S. 364, 372 (1993).  Further, *Strickland* requires that "[j]udicial scrutiny of counsel's performance . . . be highly deferential." *Strickland*, 466 U.S. at 689.  There is a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Id.* at 686-87.  The Court need not address both the deficiency prong and the prejudice prong if the defendant fails to make a sufficient showing of either one. *Id.* at 697.

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).  "The standards created by *Strickland* and section 2254(d) are both highly deferential and when the two apply in tandem, review is 'doubly' so." *Harrington v. Richter*, 562 U.S.86 (2011) (citations omitted).  These standards are "difficult to meet" and "demand[] that state court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).  Federal habeas relief functions as a "guard against extreme malfunctions in the state criminal justice systems," and not simply as a means of error correction. *Richter*, 562 U.S. at 102-03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979).  "Representation is constitutionally ineffective only if it 'so undermined the proper functioning of the adversarial process' that the defendant was denied a fair trial." *Strickland*, 466 U.S. at 687.

As to Poizner's claim that counsel was ineffective for failing to obtain and introduce psychiatric records, Poizner has not established either deficient performance or prejudice. *Id.* at 688, 694.  As to Brandon's psychiatric records, there is no evidence that counsel failed to obtain Brandon's psychiatric records.  Counsel may have obtained them, then made a strategic decision not to use them.  In any event, as discussed above in section IV(C) of this Order, had defense counsel introduced Brandon's psychiatric records from Second Chance, the prosecution would have likely called Brandon's therapists as witnesses, who would have testified regarding their misgivings about Brandon's relationship with Poizner, the concept of "grooming," and the fact that molestation victims often deny the molestation at first.  That evidence would have been detrimental, not helpful, to Poizner's case.  As to Austin's psychiatric records, Austin

testified extensively on direct and cross examination about his psychological issues, admitting he cut himself both before and after Poizner's abuse, purposely beat himself up on one occasion in order to falsely accuse his mother's boyfriend of battery, admitting he was "manic" and was on medication for having bipolar disorder, admitting he had gotten kicked out of his rehabilitation program, that he was suspended from school and had gone to juvenile hall.  (Lodgment No. 2, vol. 3 at 252, 253, 264, 266.)  Poizner has not established what further information about Austin's psychological state was contained in his psychiatric records and how that information would have helped his defense.

Counsel was also not ineffective for failing to introduce character witnesses.  As discussed above in section IV(E), had defense counsel introduced such witnesses, extremely damaging evidence from Poizner's diary would have been presented to the jury.  As the trial judge noted during the motions hearing excluding some of the diary entries, "I am persuaded that if jurors heard this evidence about him sneaking into homes and molesting children while they sleep it would be game over."  (Lodgment No. 2, vol. 1 at 38.)  Trial counsel also stated in a declaration attached to the petition for writ of habeas corpus Poizner filed in San Diego Superior Court that while he intended to present character evidence, the trial court's ruling permitting the prosecution to introduce damaging evidence from Poizner's diary made it strategically unwise to present such evidence.  (Lodgment No. 9, Ex. H.)  "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 691.

For the foregoing reasons, the Court concludes the state court's resolution of Poizner's ineffective assistance of trial counsel claims was neither contrary to, nor unreasonable application of, clearly established Supreme Court law, and was not based on an unreasonable determination of the facts.  *Williams*, 529 U.S. at 412-13.  The claim is **DENIED**.

/ / /

/ / /

M.  <u>Ineffective Assistance of Appellate Counsel (Subclaims of Grounds Three, Four, and Five)</u>

Poizner contends appellate counsel was ineffective for failing to raise claims three (trial counsel's failure to introduce character evidence), four (the trial court's modified instruction on the allegations lowered the prosecution's burden of proof) and five (Poizner's sentence violates the Eighth Amendment) on direct appeal.  (Pet. at 63-64, 72, 78; Traverse at 22-25, 26-28, 29.)  Respondent contends the state court's adjudication of the claims is neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.  (Mem of P. & A. Supp. Answer at 33, 36, 39.)

Poizner raised these claims in the petition for review he filed in the California Supreme Court challenging the denial of his habeas corpus petition by the state appellate court.  (Lodgment No. 12.)  That court denied the petition without citation of authority. (Lodgment No. 13.)  Accordingly, this Court must "look through" to the state appellate court's opinion denying the claims as the basis for its analysis.  *Ylst*, 501 U.S. at 805-06.

As to trial counsel's failure to introduce character evidence, the state appellate court concluded that "appellate counsel was not ineffective for failing to challenge the trial court's evidentiary ruling, which was clearly correct.  (*People v. Constancio* (1974) 42 Cal.App.3d 533, 546 (*Constancio*) [counsel not required to make meritless argument].)  (Lodgment No. 11 at 3.)  As to the jury instruction question, the state appellate court, citing *Constancio*, noted that "[t]he trial court . . . was not required to tell the jury four separate times . . . that the People had to prove the allegation beyond a reasonable doubt, and appellate counsel did not provide ineffective assistance by not arguing otherwise on appeal."  (*Id.* at 4.)  As to Poizner's claim that appellate counsel was ineffective because he failed to raise an Eighth Amendment challenge to his sentence, the state appellate court found as follows:

> We also reject Poizner's related claim of ineffective assistance of appellate counsel.  In light of the line of cases cited above — which Poizner's appellate counsel accurately described as "overwhelmingly unfavorable on the merits" in response to counsel's query as to why a cruel and/or unusual

68

1  punishment challenge was not made on appeal ─ and the strong evidence
2  that Poizner repeatedly molested three vulnerable victims, we cannot
3  conclude "appellate counsel failed to raise crucial assignments of error
   which arguably might have resulted in reversal, thereby depriving [Poizner]
4  of effective assistance of counsel to which he was constitutionally entitled."
5  (*People v. Long* (1974) 11 Cal.3d 134, 142.)

6  (Lodgment No. 11 at 4-5.)

7  The standard of review for claims of ineffective assistance of appellate counsel is
8  the same as that for trial counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (citing
9  Smith v. Murray, 477 U.S. 527, 535-36 (1986)).  A petitioner must first show that his
10 appellate counsel's performance fell below an objective standard of reasonableness.
11 *Strickland*, 466 U.S. at 688.  He must then establish he was prejudiced by counsel's
12 errors. *Id.* at 694.  To establish prejudice in the context of ineffective assistance of
13 appellate counsel, a petitioner must demonstrate that he would have prevailed on appeal
14 absent counsel's errors. *Smith*, 528 U.S. at 285. Appellate counsel is not required to raise
15 frivolous or meritless claims on appeal.  *Jones v. Ryan*, 691 F.3d 1093, 1101 (9th Cir.
16 2012).

17 The state appellate court correctly analyzed Poizner's ineffective assistance of
18 appellate counsel's claims.  Appellate counsel told Poizner's habeas counsel he did not
19 challenge the trial court's ruling on the admissibility of character evidence because he
20 concluded the ruling was correct, though he also stated that since he challenged the
21 admissibility of other portions of Poizner's diary, he "probably should have done the
22 same with [those] portions of the diaries."  (Lodgment No. 9, Ex. I.)  As noted above,
23 appellate counsel is not required to raise frivolous or meritless claims on appeal.  *Jones*,
24 691 F.3d at 1101.  Appellate counsel's statements indicate he did not raise the character
25 evidence claim because he at least initially believed it was meritless.  And, though he
26 later indicated he "probably should have" raised the claim since he was raising other
27 claims related to the admission of evidence from Poizner's diaries, as discussed in section
28 IV(E) of this Order, his initial analysis was correct, and Poizner would not have prevailed

69

on appeal had appellate counsel raised this claim.  *Smith*, 528 U.S. at 285.  Thus, Poizner
has not established either that appellate counsel's failure to challenge the trial court's
ruling on the admissibility of character evidence was objectively unreasonable
representation, or that he was prejudiced by appellate counsel's failure to do so.  *Id.*

Appellate counsel also did not render ineffective assistance by failing to raise a
challenge to the reasonable doubt jury instructions for the allegations.  As discussed in
section IV(F) of this Order, the jury instructions properly and sufficiently advised the jury
of the necessity to find each and every allegation to be true beyond a reasonable doubt,
and thus the claim is meritless.  *Jones*, 691 F.3d at 1101.  Because the claim is meritless,
there is no likelihood Poizner would have prevailed on appeal had appellate counsel
raised the claim.  *Smith*, 528 U.S. at 285.

Finally, appellate counsel did not render ineffective assistance by failing to raise
and Eighth Amendment challenge to Poizner's sentence.  Appellate counsel told
Poizner's habeas corpus counsel he did not raise an Eighth Amendment claim because
"the law was overwhelmingly unfavorable on the merits."  Indeed, as discussed in section
IV(G) of this Order, this Court agrees Poizner's sentence does not violate the Eighth
Amendment.   Because the claim is meritless, Poizner has not established either that
counsel erred by failing to raise the claim, or that he was prejudiced by such failure.
*Jones*, 691 F.3d at 1101; *Smith*, 528 U.S. at 285.  Accordingly, the state court's denial of
this claim was neither contrary to, nor an unreasonable application of, clearly established
Supreme Court law, and was not based on an unreasonable determination of the facts.
The claim is **DENIED.**

### N.  Cumulative Error (Ground Twelve)

Poizner contends the cumulative effect of the errors at Poizner's trial violated his
federal due process and fair trial rights.  (Pet. at 111-12; Traverse at 32.)  Respondent
argues first that there is no clearly established Supreme Court law establishing that
cumulative error is a federal constitutional error, and that alone precludes relief.  (Mem.
of P. & A. Supp. Answer at 49-51.)  In addition, Respondent notes that because the only

1   error identified in state court was the admission of consensual touching of Homeboy
2   when he was an adult to prove propensity, and that evidence was found to be alternatively
3   admissible as evidence of intent, Poizner's trial did not contain multiple errors upon
4   which a claim of cumulative error can be based. (*Id.*)

5        Poizner raised this claim in the petition for review he filed on direct appeal.
6   (Lodgment No. 7.)  That court denied the petition without citation of authority.
7   (Lodgment No. 8.)  Accordingly, this Court must "look through" to the state appellate
8   court's opinion denying the claim as the basis for its analysis.  *Ylst*, 501 U.S. at 805-06.
9   That Court stated that "[o]ur rejection of [Poizner's] claims of substantive error, and
10  conclusion that any assumed error was harmless, necessarily disposes of his claim of
11  cumulative error.  [Citations omitted.]"  (Lodgment No. 6 at 36.)

12       Although Respondent is correct that there is no clearly established Supreme Court
13  law finding cumulative error is a federal constitutional claim, the Ninth Circuit has held
14  that such clearly established law exists.  *Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir.
15  2007).  In *Parle*, the Ninth Circuit concluded that "[t]he cumulative effect of multiple
16  errors can violate due process even where no single error rises to the level of a
17  constitutional violation or would independently warrant reversal."  *Id.*, citing *Chambers*,
18  410 U.S. at 290, n. 3.  As Respondent notes, only one error occurred at Poizner's trial,
19  namely, the admission of consensual spanking as a sexual offense pursuant to Evidence
20  Code § 1108.  (Lodgment No. 6 at 20.)  But the state court properly concluded this error
21  was harmless because the evidence was alternatively admissible as evidence of "intent,
22  common plan or scheme, or any of the other permissible inferences under [1108]."  *Id.*
23  Because multiple errors did not occur at Poizner's trial, no cumulative error occurred.
24  The state court's resolution of this claim was neither contrary to, nor an unreasonable
25  application of, clearly established Supreme Court law.  *Williams*, 529 U.S. at 412-13.

26  **V.     <u>CONCLUSION</u>**

27       For the foregoing reasons, the Court concludes that Poizner is not entitled to
28  federal habeas corpus relief.  The Petition is **DENIED.**  The Court also **DENIES** a

certificate of appealability. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).

**IT IS SO ORDERED.**

DATED: December 14, 2015

Larry Alan Burns

UNITED STATES DISTRICT JUDGE

72